903 P.2d 1296

Alan Lee DUNLAP, a minor, By and Through his parents and guardians, Mark DUNLAP and Nichole Charlene Dunlap, husband and wife, and Mark Dunlap and Nichole Charlene Dunlap, individually, Plaintiffs–Appellants,

v.

Dr. Lavonne GARNER; Family Health Services Corporation, a non-profit Idaho corporation; Intermountain Health Care, Inc., a Utah corporation doing business in the State of Idaho; Cassia Memorial Hospital and Medical Center, operated by Intermountain Health Care, Inc., and John Does I through X, Defendants–Respondents.

No. 18920.

Supreme Court of Idaho,
Twin Falls, April 1992 Term.

Nov. 22, 1994.

Rehearing Denied Nov. 3, 1995.

Jenkins Law Office, and Beck & Peck, Idaho Falls, for plaintiffs-appellants. David D. Peck argued.

Quane, Smith, Howard & Hull, Boise, for defendant-respondent Dr. Lavonne Garner. Bruce R. McAllister argued.

Hall, Farley, Oberrecht & Blanton, Boise, for defendant-respondent Family Health Services Corp. Raymond D. Powers argued.

St. Clair, Hiller, St. Clair & Dalling, Idaho Falls, for defendant-respondent Cassia Memorial Hosp. William R. Dalling argued.

## ON DENIAL OF PETITION FOR REHEARING

BISTLINE, Justice.

In this medical malpractice case, we are called on to determine whether the trial court properly ruled in determining the admissibility of affidavits submitted in a summary judgment proceeding. This question causes us to examine the interplay between I.R.C.P. 56(e)[1] and I.C. §§ 6–1012 and 6–1013.[2] We conclude that the court erred by ruling that the affidavits were inadmissible at the summary judgment hearing. Accordingly, we reverse the court's order granting summary judgment and remand for further proceedings.

## BACKGROUND

Dr. Lavonne Garner treated plaintiff Nichole Dunlap during her pregnancy in 1985 and delivered the Dunlaps' child, Alan. On October 14, 1987, plaintiffs filed a complaint alleging medical malpractice against the defendants during Nichole's labor and birth of Alan. They alleged that the drug Nisentil was improperly administered to Nichole during labor, which by passing into baby Alan's circulation system, caused respiratory depression aggravated by a nuchal cord problem, which in turn caused intrauterine hypoxia, resulting in serious injury to Alan.

1. I.R.C.P. 56(e) provides, in relevant part:
Supporting and opposing affidavits [in a summary judgment motion] shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.

2. **6–1012. Proof of community standard of health care practice in malpractice case.**—In any case, claim or action for damages due to injury to or death of any person, brought against any physician and surgeon or other provider of health care, including, without limitation, any dentist, physicians' assistant, nurse practitioner, registered nurse, licensed practical nurse, nurse anesthetist, medical technologist, physical therapist, hospital or nursing home, or any person vicariously liable for the negligence of them or any of them, on account of the provision of or failure to provide health care or on account of any matter incidental or related thereto, such claimant or plaintiff must, as an essential part of his or her case in chief, affirmatively prove by direct expert testimony and by a preponderance of all the competent evidence, that such defendant then and there negligently failed to meet the applicable standard of health care practice of the community in which such care allegedly was or should have been provided, as such standard existed at the time and place of the alleged negligence of such physician and surgeon, hospital or other such health care provider and as such standard then and there existed with respect to the class of health care provider that such defendant then and there belonged to and in which capacity he, she or it was functioning. Such individual providers of health care shall be judged in such cases in comparison with similarly trained and qualified providers of the same class in the same community, taking into account his or her training, experience, and fields of medical specialization, if any. If there be no other like provider in the community and the standard of practice is therefore indeterminable, evidence of such standard in similar Idaho communities at said time may be considered. As used in this act, the term "community" refers to that geographical area ordinarily served by the licensed general hospital at or nearest to which such care was or allegedly should have been provided.

**6–1013. Testimony of expert witness on community standard.**—The applicable standard of practice and such a defendant's failure to meet said standard must be established in such cases by such a plaintiff by testimony of one (1) or more knowledgeable, competent expert witnesses, and such expert testimony may only be admitted in evidence if the foundation therefor is first laid, establishing (a) that such an opinion is actually held by the expert witness, (b) that the said opinion can be testified to with reasonable medical certainty, and (c) that such expert witness possesses professional knowledge and expertise coupled with actual knowledge of the applicable said community standard to which his or her expert opinion testimony is addressed; provided, this section shall not be construed to prohibit or otherwise preclude a competent expert witness who resides elsewhere from adequately familiarizing himself with the standards and practices of (a particular) such area and thereafter giving opinion testimony in such a trial.

On December 21, 1989, respondent Family Health Services Corporation ("Family Health") moved for a summary judgment of dismissal based upon the affidavit of Anthony D. Keys, M.D., a doctor practicing in the local community. Keys stated his opinion that Garner acted within the local area standard of care.

In opposition to the motion for summary judgment, plaintiffs filed the affidavit of Elliott B. Oppenheim, M.D., a physician practicing in Redmond, Washington. Oppenheim's affidavit states in part:

> I have consulted with physicians in Burley, Idaho, with respect to obstetrical issues for family practitioners such as those that arise in this particular case. Through these consultations, I have ascertained that a standard of care for family practitioners delivering obstetrical care in Burley, Idaho, in 1985 was no different than the standard of care in the other parts of Idaho; or indeed in other parts of the Northwestern United States. As such, I possess actual knowledge in the standard of care applicable to physicians who delivered babies in Burley, Idaho, during 1985. The opinions expressed by me in this affidavit are personally held by me and expressed with a reasonable degree of medical certainty.
>
> . . . .
>
> Based on my training, experience, and expertise, my review of the medical records pertaining to Alan and Nichole Dunlap and my familiarity of the standard of care applicable to physicians who delivered babies in Burley, Idaho, in 1985, it is my opinion that the care and treatment provided to Nichole and Alan Dunlap by Dr. Garner and the Family Health Services Corporation fell below the applicable standard of care in Burley, Idaho, in June 1985.

R. 49–50.

After hearing oral argument, the trial court denied Garner's motion for summary judgment. The court stated that Oppenheim's affidavit was sufficient to satisfy the requirements of I.C. § 6–1013 and thus withstood Garner's motion for summary judgment, although the affidavit could have been more specific.

Two weeks later, the other defendants, Cassia Memorial Hospital ("Cassia") and Intermountain Health Care ("Intermountain"), jointly moved for summary judgment of dismissal. Their motion argued that Oppenheim was *not* qualified to testify as to the local standard of care, and accordingly contended that because Oppenheim was not so qualified, then there was no dispute as to any issue of material fact, given that Cassia/Intermountain's expert had asserted in his affidavit that Cassia did not breach the local area standard of care.

In opposition to the Cassia/Intermountain motion for summary judgment, plaintiffs filed a second Oppenheim affidavit, which stated in part:

> I have consulted with health care practitioners in Burley, Idaho, with respect to the delivery of obstetrical care in acute care hospitals, such as those in this particular case. In addition, I have reviewed the deposition of Dr. Walter R. Peterson, a physician practicing in Burley, Idaho, and specifically practicing at Cassia Memorial Hospital and Medical Center in 1985, the time period relevant to this case.
>
> . . . .
>
> I have ascertained that the standard of care for acute care hospitals delivering obstetrical care in Burley, Idaho, in 1985 was no different than the standard of care in other parts of Idaho; or indeed, of other parts of the North Western United States for similar communities. As such, I possess actual knowledge of the standard of care applicable to acute care hospitals delivering babies in Burley, Idaho, in 1985. The opinions expressed by me in this affidavit are personally held by me and expressed with a reasonable degree of medical certainty.
>
> . . . .
>
> [I]t is my opinion that the care and treatment provided to Nichole and Alan Dunlap

by Cassia Memorial Hospital and Medical Center and Intermountain Health Care, Inc. fell below the applicable standard of care in Burley, Idaho, in June, 1985.

R. 65–66.

The trial court then, acting on its own motion, notified involved counsel that it would reconsider its prior denial of Garner and Family Health's motion for summary judgment. The trial court scheduled its motion for the same time as the hearing on the Cassia/Intermountain motion.

Plaintiffs submitted a third Oppenheim affidavit responsive to the court's order. That affidavit stated that Oppenheim had consulted with two physicians in Burley, Dr. Eugene Holm and Dr. Walt Petersen, and discussed obstetric care in Burley, Idaho, in 1985. According to Oppenheim, these doctors informed him that the standard of care applicable for obstetric practice in Burley is the same as anywhere else in the United States.

The affidavit of Edgar A. Reed, M.D., also submitted by plaintiffs, stated he was familiar with the standard of care pertaining to "the operations of hospitals together with the associated activities of overseeing hospital functions such as the developing or operating of a medical staff and the granting of privileges to doctors associated with hospitals." Reed stated that he had consulted with the State of Idaho Hospital Licensing Board for the specific purpose of learning the applicable standard relative to hospitals in operating their medical staffs and granting hospital privileges to doctors. Reed concluded that in his opinion Cassia Memorial Hospital's performance fell below the appropriate standard of care for hospitals.

After plaintiffs had submitted the affidavits of Oppenheim and Reed in opposition to defendants' motions for summary judgment, defendants submitted three rebuttal affidavits. The affidavit of Richard Packer contested Reed's affidavit.

As above noted, Oppenheim had stated in his affidavit that these were the two physicians in Burley, Idaho, with whom he contacted by phone to gain actual knowledge of the standard of care in Burley in 1985. These two doctors state in their affidavits that they "do not recall" speaking with Oppenheim and further dispute specific statements attributed to them by Oppenheim.

The district court's order on the motions for summary judgment provides the content of Oppenheim's third affidavit, which the court saw as applicable, and also the applicable content of the opposing defense counter-affidavits of Petersen and Holm:

In Dr. Oppenheim's third affidavit, filed on April 19, 1990, he states, in part, as follows:

2. Through my years of training and practice, I have become familiar with the standard of care in the Northwestern United States including the State of Idaho, as it relates to family practitioners providing obstetrical care. I am also familiar specifically with the standard of care throughout the State of Idaho in this regard. In addition, *I have consulted with two physicians in Burley, Idaho with respect to obstetrical issues for family practitioners such as those that arose in this particular case as it would apply to the standard of care in Burley, Idaho. These contacts occurred on January 2, 1990 in which I talked with Dr. Eugene Holm at (208) 678-9432 and Dr. Walt Peterson [sic] at (208) 678-2271.* With Dr. Holm I specifically discussed obstetrical care in Burley, Idaho. Dr. Holm described the Opinion and Order obstetrics care at Cassia Memorial Hospital as "real sophisticated" and says that they are doing excellent O.B. work for many years, which would include 1985. We discussed the standard of care applicable to the diagnosis and treatment of pregnancy and he assured me that the availability is as good in Burley as anywhere else. Furthermore, he states that the State of Washington and Idaho jointly train doctors at the University of Washington and that they all use the same procedures. The second doctor I spoke with, namely Dr.

Peterson, [sic] assured me that the standard of care applicable for obstetric practice is the same in Burley as anywhere else in the United States and in particular to that applied in the State of Washington. Through these consultations, I have concluded that a standard of care for family practitioners delivering obstetrical care in Burley, Idaho in 1985 was no different than the standard of care in other parts of Idaho; or indeed in other parts of the Northwestern United States including the State of Washington in which I have practiced for many years. As such, I possess actual knowledge of the standard of care applicable to physicians who delivered babies in Burley, Idaho during 1985. The opinions expressed by me in this affidavit are personally held by me and expressed with a reasonable degree of medical certainty. (Emphasis added.)

Affidavit of Elliott B. Oppenheim, M.D., at 2–3 [R. 109–10].

Cassia Memorial Hospital thereafter submitted the affidavits of Dr. Eugene Holm and Dr. Walter R. Petersen to counter the statements set forth in Dr. Oppenheim's April 19, 1990, affidavit that he had contacted each of them and had discussed the standard of care in Burley, Idaho.

The court's order on the motions for summary judgment stated:

Dr. Holm's affidavit, filed on April 26, 1990, states, in part:

3. That I do not know Dr. Elliott B. Oppenheim of Redmond, Washington, and I do not recall having any conversations with Dr. Oppenheim on January 2, 1990, or at any time relevant to the facts of the above captioned case.

4. I did not indicate to Dr. Oppenheim or any other party that obstetrical care at Cassia Memorial Hospital is "real sophisticated" nor did I discuss the standard of care for the delivery of new born infants at Cassia Memorial Hospital in 1985 with anyone.

5. I have never reported that the state of Washington and the state of Idaho jointly train doctors or that Washington and Idaho doctors all use the same procedures. My opinion is that each physician receives a unique education based in part upon his residency training and the instructors providing said training. It is impossible to say that all physicians are trained or practice in exactly the same way.

6. I am not familiar with the standards for obstetric care throughout the United States and particularly in Redmond, Washington, and have never stated that the standards of obstetric care in Burley, Idaho, in 1985 were the same as the standards in Washington.

7. I do not know the facts of the case of Alan Lee Dunlap, et al. v. Dr. LaVonne Garner, et al. and have never been asked to give an opinion regarding the facts of this case, the standards of care for physicians or hospitals in Burley, Idaho, in 1985, nor to assist other physicians in preparing to testify regarding said standards of care.

Affidavit of Dr. Eugene Holm, at 2–3.

The court continued:

Dr. Petersen's affidavit, filed on May 3, 1990, states, in part:

2. That I do not know Dr. Elliott B. Oppenheim who allegedly practices medicine in the state of Washington.

3. That I do not recall speaking with Dr. Oppenheim, although sometime in the last two to three months someone from Washington called to say he was considering relocating and inquired how the obstetric practice was in Burley.

4. That even if a telephone conversation did take place with Dr. Oppenheim, I did not discuss with him the facts of the case of Dunlap v. Dr. Garner, et al., nor did I discuss specific standards of care related to the interpretation of fetal heart monitor strips, the decision to deliver cesarian or vaginally, or any other issues related to standards of obstetrical care in Burley, Idaho, in 1985. That no conversations

took place between your Affiant and Elliott B. Oppenheim regarding hospital standards of care at Cassia Memorial Hospital in 1985.

5. That I am not familiar with specific standards of care relating to obstetrics practice at hospitals throughout the United States and, in particular, the standards of care for obstetrical practice in the state of Washington.

R. 109–12 (emphasis in original).

The court ordered summary judgment of dismissal as to all defendants, stating as follows:

After carefully reviewing the affidavits herein, particularly the three affidavits of Dr. Oppenheim and the affidavits of Dr. Holm and Dr. Petersen; this court concludes, as a matter of law, that Dr. Oppenheim has not submitted sufficient information to establish his actual knowledge of the local community standard of care. In other words, Dr. Oppenheim's testimony lacks foundation, as a matter of law, to be admissible as to the local community standard of health care practice herein.

R. 112.

Plaintiffs then filed a motion to alter or amend the judgment, supported by a fourth Oppenheim affidavit which stated therein that he recorded a memorandum of the conversations at the time he talked with the two Idaho doctors, and he attached the memo to this affidavit. Further, he notes that a doctor in Rupert, Idaho, Carry Saurey, confirmed his opinions as to the applicable standard of care. This affidavit was stricken by the court upon defense motion. The court then denied the motion to alter or amend the judgment. The Dunlaps then filed a notice of appeal.

The plaintiffs raise the following issues: (1) whether the district court erred in holding that Oppenheim was not qualified to testify about the local area standard of care, (2) whether the district court should have considered Oppenheim's fourth affidavit in opposition to summary judgment, and (3) whether

I.C. § 6–1012 is unconstitutional under the first and fourteenth amendments to the federal constitution and art. 1 § 18 of the state constitution. For the reasons stated below, we reverse the order granting summary judgment to defendants, and remand for further proceedings.

## DISCUSSION

**1. The district court erred in concluding at the summary judgment motion that Oppenheim's expert opinion was inadmissible.**

 Oppenheim opined that all of the defendants' actions regarding the birth of Alan Dunlap had fallen below the local area standard of care. Such testimony is essential to make out a *prima facie* case of medical malpractice. I.C. § 6–1012. As noted above, I.C. § 6–1013 sets out the requirements for such testimony. To wit:

[S]uch expert testimony may only be admitted in evidence if the foundation therefor is first laid, establishing (a) that such an opinion is actually held by the expert witness, (b) that the said opinion can be testified to with reasonable medical certainty, and (c) that such expert witness possesses professional knowledge and expertise coupled with actual knowledge of the applicable said community standard to which his or her expert opinion testimony is addressed; *provided, this section shall not be construed to prohibit or otherwise preclude a competent expert witness who resides elsewhere from adequately familiarizing himself with the standards and practices of (a particular) such area and thereafter giving opinion testimony in such a trial.*

(Emphasis added.) Also as noted above, I.R.C.P. 56(e) requires that affidavits in support of or in opposition to a summary judgment motion "set forth such facts as would be admissible in evidence and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

Turning to the facts of this case, Oppenheim's first three affidavits show that: (1) he,

like Garner, is a physician who practices family medicine, (2) his opinion is that the defendants breached the 1985 local area standard of care, (3) his opinion can be testified to with reasonable medical certainty, and (4) he possesses actual knowledge of the applicable community standard in that he spoke to two local doctors, Holm and Petersen, who informed him about the local area standard of care in Burley in 1985.

■ The district court, in considering the admissibility of whether Oppenheim's testimony under I.C. § 6–1013, concluded, on the basis of the affidavits of Holm and Petersen (that they did not "recall" speaking to Oppenheim), that the affidavits of Oppenheim were not true statements of fact as to the conversations which he related therein. In other words, the court held Oppenheim's affidavits were not admissible because Oppenheim was not truthful relative to the averred conversations with Petersen and Holm. Thus, the dispositive question becomes whether a trial court should weigh conflicting evidence regarding the admission of evidence in the setting of a summary judgment motion. We conclude that trial courts should refrain from making such factual determinations until evidence is heard on the disputed facts. On summary judgment, the trial court must look to the affidavit itself and determine whether it alleges facts which, if taken as true, would render the evidence therein admissible.[3]

In this case, the sworn statements of Oppenheim, taken as true, are sufficient to qualify him to express an expert opinion relative to the local area standard of care here applicable and whether it was or was not adhered to by Garner, at least for purposes of summary judgment. *See Kozlowski v. Rush,* 121 Idaho 825, 828–29, 828 P.2d 854, 857–58 (1992); I.C. § 6–1013. Accordingly, we hold

that the district court determination that Oppenheim's testimony was not admissible for purposes of summary judgment was in error.

**2. Even assuming the admissibility of Dr. Oppenheim's affidavits, they are inadequate to show he was competent to testify as to the local area standard of care for the hospital.**

■ As stated above, Dr. Oppenheim's affidavit, set forth sufficient facts which, if true, would qualify him to testify as to the local standard of care as to physicians. However, that is not so regarding his opinion as to the hospital's standard of care. His affidavits do not state he is trained as a hospital administrator or that he is experienced in hospital management; they state only that he has training and experience as a physician. Dr. Oppenheim, moreover, does not assert that the standard of care for the hospital is the same as the standard of care for the physician or that physicians have the training or experience to determine a hospital's standard of care.

While it is theoretically possible that Dr. Oppenheim possesses that requisite training or experience and that the standard of care is the same for both hospitals and physicians, Dr. Oppenheim's affidavits do not affirmatively show that to be the case. Therefore, Dr. Oppenheim's affidavits do not comply with I.R.C.P. 56(e) because they do not affirmatively show that he possesses the professional knowledge and expertise to testify to the hospital's standard of care.

■ However, Dr. Reed's affidavit does set forth sufficient facts which would qualify him to testify as to the local standard of care for hospitals. As noted above, I.C. § 6–1012 and § 6–1013 set out the requirements for expert testimony in a medical malpractice case. Section 6–1012 requires as an essential

---

**3.** This is not to say that the facts alleged in an affidavit must be taken in the light most favorable to .them or that all reasonable inferences must be drawn in favor of the nonmoving party. To the contrary, the Court has recently written that "[t]he question of admissibility is a threshold question to be answered before applying the liberal construction and reasonable inferences rule

to the admissible evidence." *Hecla Mining Co. v. Star–Morning Mining Co.,* 122 Idaho 778, 794, 839 P.2d 1192, 1198 (1992). In that case, the affidavits in question did not contain admissible evidence even when the allegations contained therein were taken as true. All we hold today is that the allegations in the affidavits are to be taken as true.

part of plaintiff's case affirmative proof by an expert that the defendant failed to meet the applicable standard of health care in the community in which the care was given. Section 6–1013 defines the requisite foundation of the expert opinion, requiring specifically that the expert's opinion (a) is actually held by the expert, (b) can be testified to with reasonable medical certainty, and (c) is founded upon the expert's actual knowledge of the applicable said community standard to which the expert testimony is addressed. Idaho Code § 6–1013 does not preclude an expert witness who resides outside the local community from giving opinion testimony as long as that expert demonstrates that he has adequately familiarized himself with the standards and practices of the area. *Clarke v. Prenger,* 114 Idaho 766, 760 P.2d 1182 (1988). This Court has held that it is sufficient for the out-of-state expert to gain the requisite familiarity with the standards of the community by conferring with local authorized personnel and stating that the standard did not deviate from the national standard. *Watts v. Lynn,* 125 Idaho 341, 346, 870 P.2d 1300, 1306 (1994). *Cf. Rhodehouse v. Stutts,* 125 Idaho 208, 212–13, 868 P.2d 1224 (1994) (Court held expert's testimony inadmissible where expert failed to show how he acquainted himself with community standard or to state what the standard was). In this case, Dr. Reed stated in his affidavit that he

> consulted with the State of Idaho Hospital Licensing Board to confirm that the same standard of care pertains to hospitals in Idaho including Cassia Memorial Hospital in Burley, Idaho as pertain[s] to hospitals in rural communities [with] which I am familiar. As such I possess actual knowledge of the standard of care applicable to hospitals who deliver babies in Burley, Idaho during 1985.

R. 85–86. This statement is sufficient for purposes of I.C. § 6–1013, and, therefore, Dr. Reed's affidavit complies with I.R.C.P. 56(e) because it affirmatively shows that he possesses the professional knowledge and expertise to testify to the hospital's standard of care. The trial court's grant of summary judgment in favor of the hospital is reversed accordingly.

## CONCLUSION

For the reasons above, we reverse the order granting summary judgment to defendants, vacate the judgments of dismissal of the plaintiffs' actions against the defendants, and remand for further proceedings consistent with this opinion. In light of our decision, we need not reach the other issues raised by the parties. No costs on appeal are awarded. Cassia and Intermountain's request for attorney fees is denied.

McDEVITT, C.J., JOHNSON, J., and REINHARDT, J. Pro Tem, concur.

BAKES, J. Pro Tem, sat but did not participate in the decision of the Court following his retirement on February 1, 1993.