968 P.2d 228

**Kimberlee WEST, individually and as Personal Representative of the Estate of Her Minor Child, Robert A. Grudzinskas, Plaintiff–Appellant,**

v.

**Donald And Susan SONKE d/b/a Meadow Hills Dairy Company, and Ford Motor Company, a Michigan Corporation, Defendants–Respondents,**

**and Vaughn P. Barson and Gertrude M. Barson and Barson Farms, a Partnership; John Doe, Whose True Name is Unknown, Defendants.**

No. 22546.

Supreme Court of Idaho.

Oct. 27, 1998.

Rehearing Denied Dec. 8, 1998.

Marcus, Merrick & Montgomery, Boise, for appellants. Barry L. Marcus argued.

Benoit, Alexander, Sinclair, Harwood & High, Twin Falls, for respondent Sonke. J. Walter Sinclair argued.

Eberle, Berlin, Kading, Turnbow & McKlveen, Chtd., Boise, for respondent Ford Motor Company. William A. Furhman argued.

SCHROEDER, Justice.

This is an appeal of the district court's grant of the defendants' motions for summary judgment in a wrongful death action brought by Kimberlee West (West) against Vaughn Barson (Barson), Donald and Susan Sonke (Sonkes), and Ford Motor Company (Ford) to recover damages resulting from the death of her son, Robert Grudzinskas (Robert), on April 11, 1992. West did not appeal the judgment in favor of Barson.

## I.

## BACKGROUND

On November 1, 1989, Barson entered into a contract to sell his dairy business to the Sonkes and to lease his buildings and equipment. A 1969 Ford 5000 tractor (tractor) was among the items leased to the Sonkes. The tractor was manufactured by Ford and was first sold in 1969. Barson purchased the tractor used in 1985 from Nampa Ford Tractor Sales.

The Sonkes operate Meadow Hills Dairy Farm. On April 7, 1992, the Sonkes hired Robert to work in their dairy operation. Robert was sixteen years old and had limited experience with farm machinery. He was given various jobs around the farm including accompanying another employee who operated the tractor. Robert was killed four days after starting his employment with the Sonkes while operating the tractor unsupervised for the first time.

The facts surrounding Robert's death are only partially known. The only witness to the accident is Kelly Cook (Cook) who was operating a tractor in an adjacent field some distance away. Robert was driving the tractor which was pulling a manure spreader. Cook first noticed Robert when he observed flames coming out of the engine compartment located in front of the driver's seat of Robert's tractor. According to Cook, Robert jumped off the left side of the tractor. The tractor proceeded driverless at a slow pace.

Robert walked beside the tractor, eventually remounting the tractor as it moved. Cook saw Robert bend over, as if he were reaching down to the floor area of the driver's seat. After a few seconds, he jumped off the left side of the tractor and backed away as it crossed a small ditch.

After the tractor cleared the ditch, Robert remounted the tractor for a second time but remained on the footpad located just in front of the left rear drive wheel. Shortly thereafter, Robert again jumped off the left side of the tractor. At this point the tractor was approaching a gate. Robert was alongside the manure spreader that was in tow. Cook could only see Robert's head and shoulders because the manure spreader obstructed his view. As the tractor neared the gate, Robert ran towards the tractor, but as he closed with it, he was hidden from Cook's view by the left drive wheel of the tractor. Cook did not see Robert again until he went to investigate a short time later. The tractor had proceeded through the gate and stopped in the field on the other side. Cook found Robert dead some ten to twenty feet into the adjacent field on the other side of the gate. Robert had suffered fatal trauma caused by either being crushed by the tractor, the manure spreader or both, or from being crushed between the gate and the tractor and dragged through the gate.

Ernest McNeil and Steve Dewey of Schloffman Tractor Sales inspected the tractor the following day. The purpose of this inspection is unclear, although later Mr. Sonke asked these men to provide him with an estimate regarding the extent and cost of repair. Cook also inspected the tractor the day after Robert died and observed what he believed to be gasoline dripping down the side of the fuel tank from a source somewhere beneath the engine cowling. The record does not indicate any unusual mechanical failures previously in the tractor other than the tractor had caught fire while being fueled by another employee of the Sonkes approximately one year before Robert was hired. The prior fire was apparently due to gasoline that spilled.

## II.

### PRIOR PROCEEDINGS

West instituted this action against the Sonkes, alleging that they had been negligent in warning and training Robert and negligent in causing the tractor to be fueled. Ford and Barson were later added as defendants. West brought negligence claims against the Sonkes and Barson and a product liability claim against Ford based on negligence and strict liability for design defects related to the placement of the fuel tank and the design of the tractor mounting step. The defendants filed motions for summary judgment following discovery.

Ford asserted: (1) that there was no evidence of any defect in the tractor, (2) that there was no evidence that an alleged defect caused Robert's death, and (3) that there was no evidence that the tractor was within its statutory "useful safe life" and that, consequently, Ford was entitled to the protection of Idaho's statute of repose, I.C. § [6–1403(2) ].[1] The Sonkes' motion was based on portions of Ford's motion and argued that Robert's actions were an intervening and superseding proximate cause and/or that Robert misused the tractor.

At the conclusion of the hearing on the motion for summary judgment, the district judge informed the parties that he did not believe the opinions expressed by West's expert, Bill M. Chronic, P.E. (Chronic), should be given weight because Chronic did not appear to be qualified. Chronic's opinions related to the issues of: (1) whether the placement of the fuel tank rendered the tractor unreasonably dangerous; (2) whether the placement and design of the mounting footpads rendered the tractor unreasonably dangerous; and (3) whether the tractor was operating within its "useful safe life" as defined in I.C. § [6–1403(1)(a) ]. West filed a motion to supplement Chronic's affidavit. The district court never ruled on this motion. The district court granted summary judgment in favor of all of the defendants and dismissed the action with prejudice.

The district court denied West's motion for reconsideration which was accompanied by a copy of Chronic's supplemented affidavit. During the pendency of that motion, West filed a notice of appeal with this Court alleging: (1) that the district court had erred in not considering the opinions rendered by Chronic because he was a qualified expert and his opinions raised triable issues of fact; (2) that the district court erred in analyzing the Sonkes' duty to warn Robert about the "reasonably foreseeable" dangers of remounting a moving tractor; and (3) that the district court erred in determining there were no triable issues of fact regarding Ford's alleged negligence and strict product liability. West asserts that there were triable issues of fact and that the district court erred in determining: (1) that there was no evidence that the tractor was operating within its "useful safe life" as defined in I.C. § [6–1403(2)(a) ]; (2) that no design defect existed regarding either the fuel tank or the mounting footpad; and (3) that if such a defect did exist, there was no evidence that a design defect caused Robert's death. West did not appeal the district court's judgment in favor of Barson.

## III.

### STANDARD OF REVIEW

When reviewing a ruling on summary judgment, this Court reviews all pleadings, depositions, and admissions on file, together with affidavits, if any, to determine whether there is a genuine issue as to any material fact and whether the moving party is entitled to judgment as a matter of law. *City of Chubbuck v. City of Pocatello*, 127 Idaho 198, 200, 899 P.2d 411, 413 (1995). This Court construes all facts liberally in favor of the nonmoving party. *Id.*

If the defendant moves for summary judgment on the basis that *no* genuine issue of material fact exists with regard to an element of the plaintiff's case, the plaintiff must establish the existence of an issue of fact regarding that element. In order

---

1. The Idaho Code references to chapter 14 are bracketed to indicate a change in original designation as chapter 13.

to forestall summary judgment in that case, the plaintiff must do more than present a scintilla of evidence, and merely raising the "slightest doubt" as to the facts is not sufficient to create a genuine issue. *Zimmerman v. Volkswagen of Am., Inc.,* 128 Idaho 851, 854, 920 P.2d 67, 70 (1996) (citations omitted). The existence of disputed facts will not defeat summary judgment when the plaintiff fails to make a showing sufficient to establish a *prima facie* case on which he or she will bear the burden of proof at trial. *State v. Shama Resources Ltd. Partnership,* 127 Idaho 267, 270, 899 P.2d 977, 980 (1995); *Johnson v. K–Mart Corp.,* 126 Idaho 316, 317, 882 P.2d 971, 972 (Ct. App.1994).

## IV.

## CHRONIC WAS AN EXPERT WITH RESPECT TO THE EXISTENCE OF A DESIGN DEFECT, BUT WAS NOT AN EXPERT WITH RESPECT TO WHETHER THE TRACTOR WAS OPERATING WITHIN ITS USEFUL SAFE LIFE.

The admissibility of the evidence contained in affidavits and depositions in support of or in opposition to a motion for summary judgment is a threshold question to be answered before applying the liberal construction and reasonable inferences rule to determine whether the evidence is sufficient to create a genuine issue for trial. *Hecla Mining Co. v. Star–Morning Mining Co.,* 122 Idaho 778, 784, 839 P.2d 1192, 1198 (1992). Where the expert's opinion is subject to being stricken at trial, such evidence is not entitled to evidentiary weight in a summary judgment proceeding. *Kunz v. Miciak,* 118 Idaho 130, 131, 795 P.2d 24, 25 (Ct.App.1990).

The district court's determination that a witness is qualified as an expert is discretionary. I.R.E. 104(a); *State v. Rodgers,* 119 Idaho 1047, 1051, 812 P.2d 1208, 1212 (1991); *Sidwell v. William Prym, Inc.,* 112 Idaho 76, 81, 730 P.2d 996, 1001 (1986). This Court reviews the record to determine if its decision was an abuse of this discretion. *Rodgers,* 119 Idaho at 1051, 812 P.2d at 1212; *Sidwell,* 112 Idaho at 81, 730 P.2d at 1001.

Whether there has been an abuse of discretion is tested by considering: (1) whether the district court correctly perceived the issue as one of discretion; (2) whether the district court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether the district court reached its decision by an exercise of reason. *Rhodehouse v. Stutts,* 125 Idaho 208, 213, 868 P.2d 1224, 1229 (1994). The threshold question before this Court is whether the district court erred in its determination of the admissibility of evidence presented in support of, or in opposition to, the summary judgment motion. *Shama Resources,* 127 Idaho at 270, 899 P.2d at 980.

West argues that it was error to exclude Chronic's opinions with regard to three issues: (1) whether the placement of the fuel tank without a fire wall rendered the tractor unreasonably dangerous; (2) whether the placement and design of the mounting footpads rendered the tractor unreasonably dangerous; and (3) whether the tractor was operating within its "useful safe life" as defined in I.C. § [6–1403(1)(a) ]. The record on appeal does not contain any evidence that the district court ruled upon West's motion to supplement the affidavit of her expert. Nevertheless, the district court had the supplemental affidavit before it when it denied West's motion for reconsideration. The Court proceeds from the premise that the district court denied the motion with knowledge of the information contained in Chronic's supplemental affidavit. The supplemental affidavit is contained in the record on appeal.

The evidentiary rules which govern the Court's analysis are Idaho Rules of Evidence (I.R.E.) 702, 703 and 403. An expert is someone who possesses "scientific, technical, or other specialized knowledge [that] will assist the trier of fact to understand the evidence or to determine a fact in issue." I.R.E. 702; *Ryan v. Beisner,* 123 Idaho 42, 46, 844 P.2d 24, 28 (Ct.App.1992). The test for determining whether a witness is qualified to render an expert opinion is not rigid. A witness may be qualified as an expert by virtue of his or her "knowledge, skill, experi-

ence, training, or education," I.R.E. 702, which is "beyond the competence of the average layman or juror." *Bean v. Diamond Alkali Co.,* 93 Idaho 32, 34, 454 P.2d 69, 71 (1969). "Formal training or an advanced degree is not essential to qualify a witness as an expert, but practical experience or special knowledge must be shown to bring a witness within the category of 'expert.' " *IHC Hosp., Inc. v. Board of Comm'rs,* 108 Idaho 136, 142, 697 P.2d 1150, 1156 (1985), *overruled on other grounds by Intermountain Health Care, Inc. v. Board of Comm'rs,* 108 Idaho 757, 762, 702 P.2d 795, 800 (1985). A witness may be qualified to render opinions about some things but not others. *See Garrett Freightlines, Inc. v. Bannock Paving Co.,* 112 Idaho 722, 733, 735 P.2d 1033, 1044 (1987); *Sidwell,* 112 Idaho at 80–81, 730 P.2d at 1000–01.

 Chronic was qualified as an expert in some respects, but not others. It was not an abuse of discretion to reject his opinion that the tractor was operating within its useful safe life and "could have reasonably functioned for at least an additional five years had it been absent the defect." Chronic's affidavits do not show that he had experience in assessing the useful safe life-span of agricultural tractors in general or that he physically inspected the actual tractor involved or one similar to it manufactured by Ford.

 Chronic was, however, qualified to give an opinion regarding the existence of a design defect. He had experience working as a tractor mechanic and has expertise in accident reconstruction. He is a civil engineer. His affidavits show that he has expertise in causative factors as well as mechanical and design expertise. In considering Chronic's first affidavit, the district court stated, "There is nothing in his affidavit showing that he has any expertise in safety design of farm tractors or other similar equipment." However, Chronic's supplemental affidavit states that there is *no recognized status as a* "safety design engineer," but that engineers are trained to analyze safety factors. In light of this fact the district court should have considered his opinions regarding the existence of design defects in deciding the motion for summary judgment. Chronic's

opinions establish a triable issue of fact as to the existence of design defects. If there were design defects, the question of whether those defects were a proximate cause of Robert's death is also a question for the trier of fact.

## V.

## FORD WAS NOT ENTITLED TO SUMMARY JUDGMENT ON THE APPLICABILITY OF IDAHO'S STATUTE OF REPOSE, I.C. § [6–1403].

The Idaho Product Liability Reform Act, I.C. §§ [6–1401] to [6–1409], is an adaptation of the Model Uniform Product Liability Act (MUPLA). Both Acts include a repose provision which provides that a product seller is not generally subject to liability to a claimant for harm if the harm was caused after the product's useful safe life expires. Harm caused more than ten years after the date of delivery has presumptively occurred beyond the useful safe life of the product. I.C. § [6–1403(2)(a)]; MUPLA § 110(B)(1).

Section [6–1403(1)(a)] provides:

Except as provided in subsection (1)(b) hereof, a product seller shall not be subject to liability to a claimant for harm under this chapter if the product seller proves by a preponderance of the evidence that the harm was caused after the product's "useful safe life" had expired.

Section [6–1403(2)(a)] provides:

Generally. In claims that involve harm caused more than ten (10) years after time of delivery, a presumption arises that the harm was caused after the useful safe life had expired. This presumption may only be rebutted by clear and convincing evidence.

The burden with respect to rebutting the presumption that the harm was caused after the useful safe life had expired was discussed in *Oats v. Nissan Motor Corp. in the U.S.A.,* 126 Idaho 162, 879 P.2d 1095 (1994), involving the question of whether there was sufficient evidence in the record to conclude that a Nissan 280Z " 'would normally be likely to perform ... in a safe manner.' " *Id.* at 167,

879 P.2d at 1100 (quoting I.C. § 6-1403(1)(a)). The Court explained:

> In order to resist Nissan's motion for summary judgment, Oats does not need to prove by clear and convincing evidence that the useful safe life of the 280Z 2+2 in question had not expired when the accident occurred, only that there is a genuine issue regarding that material fact. "The burden of the plaintiff when faced with a motion for summary judgment, is not to persuade the judge that an issue will be decided in his favor at trial. Rather, he simply must present sufficient materials to show that there is a *triable* issue."

*Id.* at 168, 879 P.2d at 1101 (quoting *G & M Farms v. Funk Irrigation Co.*, 119 Idaho 514, 524, 808 P.2d 851, 861 (1991)).

Barson, the owner of the tractor gave the following testimony in his deposition:

Q: When you entered into your agreement with Mr. Sonke, as far as you're concerned was the tractor safe to operate?

A: Yes, sir.

Q: At the time of the accident, Robert's accident, was the tractor safe to operate?

. . . .

A: Sir, that was after the transaction took place.

Q: After the agreement with Mr. Sonke?

A: Yes.

Q: Okay.

A: As far as I know it was in perfect shape.

Q: All right. Would you say in your opinion, Mr. Barson, at the time of the accident was the tractor operating within its useful safe life?

[Objection on the basis the question called for a legal conclusion and lacked foundation.]

Q: Well, I'm using words as they are ordinarily used and as you understand the meaning. Was the tractor being operated within its useful safe life?

A: I have an answer that I could give you, sir, but I don't understand useful safe life. What am I missing here?

Sonke gave the following testimony:

Q: In your opinion was it a safe tractor?

A: I would call it safe, yes.

Q: You were using it in your operation on a daily basis?

A: Every day, five, six hours a day.

Q: So would you say that it was still within the useful—safe useful life of the tractor at that time?

[Objection on the basis the question called for a legal conclusion and lacked foundation.]

Q: In your opinion, was the tractor at the time of the accident, being operated within its safe useful life?

A: Certainly.

Ford argues that this testimony is inadmissible lay opinion and cannot establish a triable issue with respect to the useful safe life of the tractor. Ford claims that "useful safe life" is a term of art requiring knowledge of statutory construction or the general product's life-span. The district court determined that the relevant inquiry involved in "useful safe life" is that of the general product's life-span, not the particular product at issue:

> "Useful safe life" is not based upon whether the particular item at issue was actually used safely beyond the ten year period. Idaho Code § 6-1403(1)(a) defines useful safe life as the time after delivery "during which the product would **normally be likely to perform** ... in a safe manner." The period of time after delivery during which a mass produced product would normally be likely to perform in a safe manner must be based upon a consideration of the useful safe life of products of that type, not upon the period of time that the particular product at issue actually performed safely prior to the accident.

(Emphasis added).

If the only relevant inquiry involves the life-span of the product generally, then Ford's argument is correct, and Barson and Sonke's opinions are inadmissible. If, how-

ever, the relevant inquiry is into the useful safe life of the particular product at issue, then Barson and Sonke's opinions are admissible under I.R.E. 701, governing lay opinions and providing that "testimony of the witness in the form of opinions or inferences is limited to those opinions or inferences which are ... (b) helpful to a clear understanding of the testimony of the witness or the determination of a fact in issue." I.R.E. 701.

Language in I.C. § [6–1403] indicates that the relevant inquiry is the general product's life-span.[2] Analysis of the MUPLA also supports this conclusion.[3] However, language in the MUPLA and Idaho case law also indicates that the relevant inquiry is into the life-span of the particularized product.[4]

■ The Court concludes that there are two ways to overcome the presumption that a product's useful safe life has expired. One is by establishing the relevant class of product and offering evidence that the product at issue falls within that class of product which has a useful safe life in excess of the presumptive period. The other is to establish that the particular product was operating within its useful safe life. It may be that a particular product has a useful safe life beyond the normal product by reason of storage, meticulous maintenance or other factors that can be shown to have extended its useful safe life beyond the ten-year period giving rise to the statutory presumption. In this case, the district court did not evaluate the

evidence that indicated the tractor was operating within its useful safe life.

Barson and Sonke had knowledge of the history of the tractor for approximately one-third of its life-span. During that time Barson rebuilt the engine and Sonke fixed unspecified "mechanical things" on the tractor. A representative from Schloffman Tractor Sales stated that the business did not have past maintenance records on the tractor and did not warrant used tractors beyond thirty days. However, the tractor was apparently in good condition when sold. In *Olsen v. J.A. Freeman Co.*, 117 Idaho 706, 791 P.2d 1285 (1990), the Court held that summary judgment was proper on the issue of useful safe life:

The record before the trial court clearly established that the hay baler had been owned by several different individuals, was worn out and had been rebuilt at least twice with parts borrowed from other machinery. Olsen did not establish how his injury occurred and offered absolutely no evidence in the form of affidavit or otherwise to oppose the motion for summary judgement.... Although an expert was hired by Olsen and his deposition is in the record, a careful review of the deposition reveals that the expert had never seen the hay baler in question or one similar to it manufactured by Freeman. Although Olsen's expert witness testified in his deposition that the hay baler did not comply with ANSI standards, that it had a design de-

2. According to the statute the useful safe life of a product begins at the time of its delivery and extends for the time during which the product "would *normally be likely to perform*." I.C. § [6–1403(1)(a)] (emphasis added).

3. Section 110 [of the MUPLA] uses the term "useful safe life" (not "useful life"... ), because the period in which the product can have some "utility" may be well beyond the period in which the product is "safe." For example, a driver may continue to "use" tires that lack sufficient treads for safety.

44 Fed.Reg. 62,733 (1979).

4. Examples of evidence that is especially probative in determining whether a product's useful safe life had expired include:

 (a) The amount of wear and tear to which the product had been subject;

 (b) The effect of deterioration from natural causes, and from climate and other conditions under which the product was used and stored;

 (c) The normal practices of the user, similar users, and the product seller with respect to the circumstances, frequency, and purposes of the product's use, and with respect to repairs, renewals, and replacements;

 (d) Any representations, instructions or warnings made by the product seller concerning proper maintenance, storage, and use of the product or the expected useful safe life of the product; and

 (e) Any modification or alteration of the product by a user or third party.

MUPLA § 110(A)(1)(a)-(e).

Idaho did not incorporate this language in its statutory scheme; however, these factors were noted in *Olsen v. J.A. Freeman Co.*, 117 Idaho 706, 713 n. 6, 791 P.2d 1285, 1292 n. 6 (1990).

fect and failed to warn, the record is completely devoid of any evidence to rebut the statutory presumption that the product's useful safe life had expired.

*Id.* at 714, 791 P.2d at 1293.

■ This case nudges perilously close to *Olsen.* However, as noted in *Oats,* the plaintiff is not required to meet the clear and convincing evidence standard at the summary judgment stage. There is sufficient evidence to indicate that there is a triable issue of fact on the question of whether the tractor was operating within its useful safe life.

## VI.

## THE DISTRICT COURT DID NOT ERR IN GRANTING SUMMARY JUDGMENT FOR THE SONKES.

West argues that the district court failed to correctly perceive the key issue related to the Sonkes' negligence and so erred in determining that there were no triable issues of fact. West claims that the issue is not, as the district court determined, whether Sonke "knew or should have known" that the tractor would catch fire, but rather whether Sonke should have known that an inexperienced worker might jump off of a moving tractor and then attempt to remount it. Given the hazards of farm machinery, West argues that Robert's inexperience with farm machinery, and the fact that there was deposition testimony from Barson that remounting moving farm equipment is a relatively normal event, triable issues of fact existed as to whether a reasonably prudent farm employer would have foreseen the potential danger to Robert and warned, instructed or trained him not to attempt to remount a moving tractor.

### A. Duty

■ A cause of action in negligence includes proof of: (1) a duty, recognized by law, requiring the defendant to conform to a certain standard of conduct; (2) a breach of duty; (3) a causal connection between the defendant's conduct and the resulting injuries; and (4) actual loss or damage. *Brooks v. Logan,* 127 Idaho 484, 489, 903 P.2d 73, 78

(1995); *Black Canyon Racquetball Club, Inc. v. Idaho First Nat'l Bank, N.A.,* 119 Idaho 171, 175–76, 804 P.2d 900, 904–05 (1991); *Alegria v. Payonk,* 101 Idaho 617, 619, 619 P.2d 135, 137 (1980). The Sonkes had a duty to exercise reasonable care commensurate with the nature of their business in order to protect Robert from hazards incident to the employment and to provide him with safe tools, appliances, machinery, and working places. *Deshazer v. Tompkins,* 89 Idaho 347, 356, 404 P.2d 604, 608 (1965). *See Otto v. Mell,* 94 Idaho 109, 111, 482 P.2d 84, 85 (1971).

The district court noted:

With respect to the allegation that the Sonkes failed to properly instruct and train the decedent (Count One), the Plaintiffs contend that the Sonkes negligently failed to instruct the decedent on how to handle emergencies such as a tractor fire while he was driving the tractor. There is no duty to warn of a danger that was not reasonably foreseeable. *Sidwell v. William Prym, Inc.,* 112 Idaho 76, 730 P.2d 996 (1986). There is nothing in the record which would support a conclusion that the Sonkes could have reasonably anticipated an emergency of that nature or magnitude. Mr. Sonke testified he never had a problem with gasoline spilling out of the fuel tank. He did not know of any leaks in the fuel tank. He never had a tractor he was operating catch fire, nor was he aware of that ever happening to anyone else.

... Under the facts of this case, it was simply not foreseeable that the tractor would catch fire while it was being operated. There was therefore no duty to warn or train the decedent what to do if that occurred.

(Footnotes and citations omitted).

■ Focusing on whether Sonke could have reasonably foreseen the tractor catching fire was error since the fire did not kill Robert. Robert's circumstances would have been just as tragic had he pursued the same course of conduct in dealing with a moving tractor that was not on fire. In light of the deposition testimony that it was common practice in this line of business to mount and

dismount moving tractors, it is not persuasive to reason that since the fire was what probably caused Robert to dismount on the occasion of his death, that the Sonkes must have foreseen a fire as the originating factor causing their employee to attempt to remount a moving tractor before any duty on their part is implicated to warn. It is unpersuasive to say that because there is no direct evidence of how Robert died, no duty can be pinpointed that the Sonkes may have breached. The Sonkes had a duty to warn about mounting or dismounting a moving driverless tractor.

## B. Breach

■ In order to show that the Sonkes breached a duty West must provide evidence that they acted inappropriately or inappropriately failed to act. *See Western Stockgrowers Ass'n v. Edwards*, 126 Idaho 939, 942, 894 P.2d 172, 175 (Ct.App.1995). The evidence does not permit a conclusion regarding how Robert was crushed or dragged to death, but the evidence does show that Robert died because he: (1) dismounted a moving tractor before disengaging it or shutting it off; and (2) he placed himself too closely to a moving, driverless tractor. Sonke claims that he "instructed Robert not to dismount the tractor until Robert was sure that the tractor was stopped securely and that if there was any doubt he should set the brake before he dismounted." West has not come forward with any evidence to refute this statement and, in failing to do so, has failed to carry her burden on summary judgment. *Zimmerman*, 128 Idaho at 854, 920 P.2d at 70. Summary judgment for the Sonkes was proper.

## VII.

### COSTS AND FEES

■ The Sonkes are awarded costs on appeal. I.A.R. 40(a). The Sonkes also ask for an award of attorney fees pursuant to I.C. § 12–121 but have provided no argument for their request. Where a party fails to support an issue on appeal with authority or argument it will not be considered. *State v.*

*Zichko*, 129 Idaho 259, 263, 923 P.2d 966, 970 (1996).

West is awarded costs on appeal against Ford. I.A.R. 40(a).

## VIII.

### CONCLUSION

The decision of the district court granting summary judgment in favor of the Sonkes is affirmed. Costs are awarded to the Sonkes. The decision of the district court in favor of Ford is vacated and the case is remanded for further proceedings. West is awarded costs against Ford. No attorney fees are allowed.

Justices JOHNSON and SILAK, concur.

Justice WALTERS, concurring in part and dissenting in part.

I concur with all but part VI of the Court's decision. As to part VI, I disagree that the summary judgment in favor of the defendants Sonke should be affirmed. I believe that a genuine issue of material fact exists with regard to the discharge by the Sonkes of their duty to exercise reasonable care to protect Robert and to provide him with safe working conditions. This issue should be decided by a jury as fact-finder.

The conclusion that the district court properly granted summary judgment to the Sonkes is based upon two factors. The first is Mr. Sonke's testimony by deposition that he had instructed Robert

> [t]o not dismount until the tractor—you're sure it's secure—stopped securely. If there is any question, well, you have a brake to set on it and set the brake on it before you get off the tractor.

The second factor is the court's observation that the plaintiff failed to produce any evidence to refute Mr. Sonke's statement. The court's acceptance of Mr. Sonke's statement essentially as true because it was not refuted by the plaintiff is tantamount to making a credibility determination, in the process of weighing evidence, an approach that has been found inappropriate in resolving summary judgment proceedings. *Dunlap ex rel. Dunlap v. Garner*, 127 Idaho 599, 605, 903 P.2d 1296, 1302 (1994); *Sohn v. Foley*, 125

Idaho 168, 171, 868 P.2d 496, 499 (Ct.App. 1994).

I submit that there was other evidence, leading to a different result, that could be considered in deciding whether the Sonkes discharged their duty to Robert, taking into account the principle that the party opposing a motion for summary judgment is entitled to the benefit of *all* reasonable inferences that can be drawn from the evidentiary facts—not merely the inference which may appear to be the most reasonable only. *G & M Farms v. Funk Irrigation Co.*, 119 Idaho 514, 808 P.2d 851 (1991). If there are conflicting inferences contained in the record or reasonable minds might reach different conclusions, summary judgment is inappropriate. *Bonz v. Sudweeks*, 119 Idaho 539, 808 P.2d 876 (1991).

As noted in the recitation of the relevant background facts, a witness, Mr. Cook, testified by deposition that immediately before Robert was killed he observed Robert dismount and remount the tractor several times while the tractor was moving and was on fire. No witness presented any testimony exactly as to how Robert was killed—whether by slipping or stumbling and falling under either the tractor or under the manure spreader or both, or by being crushed between the machinery and the gate through which the tractor and manure spreader traveled.

Nevertheless, several reasonable inferences favorable to the plaintiff's case may be drawn based on Mr. Cook's testimony. Because Mr. Cook saw Robert get off the tractor twice while the tractor was moving, it may reasonably be inferred that, contrary to Mr. Sonke's testimony, Mr. Sonke did not inform Robert about dismounting from the tractor without bringing it to a complete halt. Or, if Mr. Sonke had admonished Robert as the quoted portion of his deposition indicates, it is possible that Robert did not hear or comprehend Mr. Sonke's instructions inasmuch as the portion of the deposition submitted with this appeal does not detail or disclose the circumstances surrounding Mr. Sonke's alleged instructions to Robert. If Robert did not hear or understand Mr. Sonke's warnings, it would, of course, be the same as if Mr. Sonke had not admonished

Robert at all. Also, in light of the limited record, another view might be that Robert's activities showed that Mr. Sonke's instructions were not intended to apply in such unusual circumstances where Robert was faced with a fire on the tractor, or was unable for some reason to stop the tractor by turning the engine off or by utilizing the vehicle's brakes. Finally, it can be inferred that Robert heard but chose to disregard Mr. Sonke's instructions. This latter conclusion rests heavily on accepting Mr. Sonke's deposition testimony as credible, but it does not accord the plaintiff the benefit of an equally permissible conclusion: that a decedent may be deemed to have exercised due care for his or her own safety and well-being at the time of an accident causing the decedent's death. See cases cited at *Smith v. Angell*, 122 Idaho 25, 36 n. 8, 830 P.2d 1163, 1174 n. 8 (1992) (Bistline, J., dissenting).

At the very least, it would seem that Robert's comprehension of Mr. Sonke's instructions relating to his own safety should be considered in light of his conduct as described by Mr. Cook. Whether Robert's activities in getting off and then remounting the tractor several times, as observed by Mr. Cook, is sufficient to cast doubt on Mr. Sonke's deposition testimony about telling Robert not to dismount from the tractor until it was stopped is a question that should be submitted to the jury for resolution, as a factual dispute based upon reasonable inferences. A jury may decide that Robert's conduct was consistent with using due care for his own safety, and that Mr. Sonke's alleged unconditional instructions not to dismount from the tractor without first bringing the tractor to a halt and setting the brake were either not given or were not comprehended by Robert.

In light of these several conflicting but reasonable inferences from which reasonable minds might reach different conclusions, summary judgment on the question of the discharge of the Sonkes' duty to exercise the required care to protect Robert and to provide him with safe working conditions was improper. Accordingly, the summary judgment entered by the district court as to the Sonkes, as well as to Ford Motor Company,

should be vacated and the action remanded to the district court for further proceedings.

Chief Justice TROUT, concurring in part and dissenting in part V.

Because I believe the Court's opinion wrongly permits a defense of useful safe life to be proven by evidence of only the particular product in question, I must respectfully dissent.

While Idaho has not adopted the factors from the MUPLA for determining whether a product's useful safe life has expired, this Court has previously made reference to them. In *Olsen v. J.A. Freeman Co.,* 117 Idaho 706, 713 & n. 6, 791 P.2d 1285, 1292 & n. 6 (1990) the Court noted that Idaho deleted the examples of useful safe life and mentioned them in a footnote in *Olsen* simply to illustrate what those factors are. I agree that those factors are helpful in determining what was intended by the use of the term "useful safe life" within the MUPLA, as adopted by Idaho. Those examples clearly indicate that in order to determine how long a product "would normally be likely to perform," an examination must be made not only of the particular product in question, but also of the type of product in general. I don't know how a determination can be made of what is "normal" for a product without looking at other products of its type for comparison.

Indeed, one of the factors to consider under the MUPLA is "[t]he normal practices of the user, similar users, and the product seller with respect to the circumstances, frequency, and purposes of the product's use." MUPLA § 110(A)(1)(c). Calling for an examination of the product's use by other users clearly contemplates a comparison with other similar products. And if, as the Court's opinion asserts, the Court has adopted the examples of useful safe life, those examples would require the Court to examine both the product in question and the product in general.

I agree with the Court's determination that Chronic was not qualified as an expert to testify with respect to an assessment of the useful safe life of agricultural tractors in general. While Barson and Sonke were qualified to opine as to the useful safe life of this particular tractor, they likewise could not offer opinions about these tractors in general. Thus, there was insufficient evidence in the record to create a material issue of fact about the useful safe life of this tractor and the district judge was correct in granting summary judgment for the defendant Ford Motor Company.