153 P.3d 1180

**Harold Gene WEEKS, Ferren Weeks, Lowell Weeks, Douglas Weeks, Howard Weeks, individually and Joan Weeks Chapple, individually and as the parent and guardian of Misty Eve Hahn, Plaintiffs–Appellants,**

v.

**EASTERN IDAHO HEALTH SERVICES, dba Eastern Idaho Regional Medical Center, Defendant–Respondent.**

No. 32458.

Supreme Court of Idaho,
Boise, February 2007 Term.

Feb. 28, 2007.

Beard St. Clair Gaffney McNamara Calder, P.A. Idaho Falls, for appellants. Michael D. Gaffney argued.

Hall Farley Oberrecht & Blanton, P.A., Boise, for respondent. Richard E. Hall and Kevin J. Scanlan argued.

SCHROEDER, Chief Justice.

This is an appeal of a grant of summary judgment in a medical malpractice case between members of the Weeks family (the Weeks) and Eastern Idaho Health Services doing business as Eastern Idaho Regional Medical Center (EIRMC).

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

Evelyn Weeks entered the hospital on May 12, 2003, after collapsing at her home. At that time her status was assessed on the Glasgow Coma Scale as level 12. A CT scan revealed a hemorrhage and hematoma in her brain. Early the following morning a cathe-ter was placed in her head to drain excess fluid from her brain. A lengthy surgery followed and Evelyn was placed in intensive care. The attending nurse ended her shift at approximately 7:00 pm and returned the next morning slightly before 9:00 am. Upon her return the nurse notified Dr. Greenwald of Evelyn's decreased level of consciousness and discovered that a mixture of dopamine, amiodarone, magnesium sulphate, potassium phosphate, and potassium chloride were infusing into the catheter. These medications were intended to be injected through an intravenous line but instead had been connected to the catheter intended to drain fluid from the brain. A total of at least 296 cc's had been infused into Evelyn's ventriculostomy catheter. Evelyn's status declined from a Glascow Coma Scale level 6 to v3, "v" indicating that she required the breathing assistance of a ventilator. There is no information regarding the precise time of the error, but it could have occurred either a matter of minutes or up to eight hours prior to Evelyn's change in condition.

EIRMC admitted that the nursing error violated the standard of care. The issues for trial were causation and damages. The district court granted EIRMC's motion for summary judgment, concluding that the case required expert testimony to prove causation, and that the Weeks' expert, Dr. Edward Smith, was not competent to testify regarding the effect of the nursing error. This appeal followed.

## II.

### STANDARD OF REVIEW

■ In an appeal from an order of summary judgment, this Court's standard of review is the same as the standard used by the trial court. *Lockheed Martin Corp. v. Idaho State Tax Comm'n,* 142 Idaho 790, 793, 134 P.3d 641, 644 (2006) (citing *Infanger v. City of Salmon,* 137 Idaho 45, 46–47, 44 P.3d 1100, 1101–02 (2002)). All disputed facts are to be construed liberally in favor of the non-moving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the non-moving party. *Id.* Summary judgment is appropriate if the

pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Id.* If there is no genuine issue of material fact, only a question of law remains, over which this Court exercises free review. *Id.*

 A district court has broad discretion in determining whether a witness is qualified as an expert. *Warren v. Sharp*, 139 Idaho 599, 605, 83 P.3d 773, 779 (2003). Admissibility of expert testimony is also a matter committed to the discretion of the trial court and will not be overturned absent an abuse of that discretion. *Athay v. Stacey*, 142 Idaho 360, 366, 128 P.3d 897, 903 (2005). When this Court reviews an alleged abuse of discretion by a trial court, the sequence of inquiry is: (1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by the exercise of discretion. *Id.*

## III.

## THE DISTRICT COURT ERRED IN EXCLUDING THE EXPERT TESTIMONY CONCERNING CAUSATION

The Weeks assert that the district court abused its discretion by determining that Dr. Edward Smith did not qualify as an expert and that his testimony was inadmissible to prove causation. Dr. Smith is a board certified neurosurgeon with thirty years experience.

 *Qualification.* The district court held that Dr. Smith did not qualify as an expert on the issue of causation. The test for determining whether a witness is qualified as an expert is "not rigid" and can be found in Idaho Rule of Evidence 702. *West v. Sonke*, 132 Idaho 133, 138–39, 968 P.2d 228, 233–34 (1998). Idaho Rule of Evidence 702 states:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a

fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

 A qualified expert is one who possesses "knowledge, skill, experience, training, or education." I.R.E. 702. Formal training is not necessary, but practical experience or special knowledge must be shown to bring a witness within the category of an expert. *Warren*, 139 Idaho at 605, 83 P.3d at 779 (citing *West*, 132 Idaho at 138–39, 968 P.2d at 233–34). The proponent of the testimony must lay foundational evidence showing that the individual is qualified as an expert on the topic of his or her testimony. *State v. Burrow*, 142 Idaho 328, 330, 127 P.3d 231, 233 (Ct.App.2005) (citing *State v. Winn*, 121 Idaho 850, 855, 828 P.2d 879, 884 (1992)).

 EIRMC argues that the Weeks failed to cite to relevant authority that the district court erred in finding Dr. Smith was not qualified. The Weeks cite to I.R.E. 702. A citation to the rule is a citation to authority. *See Eighteen Mile Ranch, LLC v. Nord Excavating & Paving, Inc.*, 141 Idaho 716, 720, 117 P.3d 130, 134 (2005). EIRMC also argues that this is harmless error because Dr. Smith's testimony was ultimately inadmissible.

 The district court stated that Dr. Smith was not qualified to testify, but the analysis focused on whether the evidence was admissible and based upon sound scientific principles. The district court did not address the test for qualification of an expert witness or Dr. Smith's qualifications as an expert witness, simply concluding that "Dr. Edward Smith is not qualified to testify as an expert witness on the issue of causation." However, application of the correct legal standards concerning Dr. Smith's education, specialized knowledge, and thirty years of experience establishes that he met the test outlined in I.R.E. 702 to establish him as an expert.

 *Admissibility.* The district court ruled that Dr. Smith's testimony was not admissible because it was not based upon sound scientific principles. Admissibility of evidence within depositions and affidavits in

support or in opposition to a motion for summary judgment is a threshold question to be addressed before a court can determine the outcome of the summary judgment motion. *Bromley v. Garey*, 132 Idaho 807, 811, 979 P.2d 1165, 1169 (1999). The test for admissibility of expert testimony is Rule 702. *State v. Merwin*, 131 Idaho 642, 646, 962 P.2d 1026, 1030 (1998). Idaho Rule of Evidence 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

▮ Expert opinion which is speculative, conclusory, or unsubstantiated by facts in the record is of no assistance to the jury in rendering its verdict and, therefore, is inadmissible as evidence. *Bromley*, 132 Idaho at 811, 979 P.2d at 1169. The Court has not adopted the *Daubert* standard for admissibility of an expert's testimony but has used some of *Daubert's* standards in assessing whether the basis of an expert's opinion is scientifically valid. *See Swallow v. Emergency Med. of Idaho*, 138 Idaho 589, 595 n. 1, 67 P.3d 68, 74 (2003) ("this Court has not adopted the *Daubert* test for admissibility"). The *Daubert* standards of whether the theory can be tested and whether it has been subjected to peer-review and publication have been applied, but the Court has not adopted the standard that a theory must be commonly agreed upon or generally accepted. *Compare Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 593–95, 113 S.Ct. 2786, 2796–97, 125 L.Ed.2d 469, 482–84 (1993) *with Merwin*, 131 Idaho at 646, 962 P.2d at 1030.

▮ Thus "[t]he question under the evidence rule is simply whether the expert's knowledge will assist the trier of fact; not whether the information upon which the expert's opinion is based is commonly agreed upon." *Merwin*, 131 Idaho at 646, 962 P.2d at 1030. The Court stated that a scientific study does not have to be universally accepted in order for experts to validly use the study as a basis of opinion. *Id.* The focus of the court's inquiry is on the "principles and methodology" used not the conclusions they generate. *Id.* (citing *Daubert*, 509 U.S. at 595, 113 S.Ct. at 2797, 125 L.Ed.2d at 484). When an "expert's opinion is based upon scientific knowledge, there must likewise be a scientific basis for that opinion" because if the reasoning or methodology underlying the opinion is not scientifically sound, then the opinions would not assist a trier of fact. *Swallow*, 138 Idaho at 592, 67 P.3d at 71.

In *Merwin* the district court allowed testimony regarding the extent of injuries suffered by children in falls. 131 Idaho at 646–47, 962 P.2d at 1030–31. The Court held that the district court did not abuse its discretion in admitting expert testimony based upon case studies rather than controlled experiments. *Id.* The Court reasoned that there were obvious ethical restrictions on conducting controlled, planned trauma studies on humans. *Id.* The case studies were not controlled experiments and other studies contradicted their conclusions; however, they had been subjected to peer review and they all involved falls observed by witnesses or occurring in a hospital environment. *Id.* This was deemed to be sufficient indicia of reliability to meet the requirements in I.R.E 702. *Id.*

In *Swallow* the district court did not allow testimony from experts regarding a causal relationship between taking high doses of Cipro and heart attacks. 138 Idaho at 593–94, 67 P.3d at 72–73. The Court held that the district court did not abuse its discretion in disallowing expert testimony because there was no showing that an overdose of Cipro can cause a heart attack. *Id.* The Court reasoned that the expert's basis of testimony, eleven adverse reaction reports filed with the FDA over a period of eight years involving thousands of instances where Cipro was administered, was not statistically significant. *Id.* The adverse reaction reports were submitted by health care providers who suspected a relationship between a drug and an adverse event and were based solely on the temporal relationship between the administration of Cipro and the adverse cardiac event. *Id.* This was not sufficient to admit the expert's testimony. *Id.* There is little

relationship between *Swallow*, relied upon by the district court, and this case.

■ In this case Dr. Smith testified that the infusion was a substantial factor in causing Evelyn's death to a reasonable medical probability, but he was unable to determine the exact effect of the medication on Evelyn's brain. He testified that the mechanical aspect of fluid buildup could not be separated from the chemical aspect of the composition of the fluid, and he was not certain whether the chemicals themselves, the volume of fluid, or the combination of the two caused her death. Dr. Smith stated that it was impossible to tell the exact hydrodynamic, autoimmune, and biochemical effects of the infusion because that would require a series of controlled experiments or laboratory studies which would never be performed. No research has been done based upon this exact type of occurrence, and the effects of administering dopamine and amiodarone directly into the central nervous systems of humans or animals have never been studied. However, Dr. Smith was clear that infusion of this volume of fluid, whether over an eight hour period or a period of a few minutes, would cause a deleterious effect "just from the fact of fluid going in when it should be going out." This is not speculation and is based on more than a temporal concurrence.

Dr. Smith based his opinion upon his experience and research. He provided many articles as a basis for his opinion, including: *Monitoring and interpretation of intracranial pressure; Not again!* (about a patient dying from an erroneous intrathecal injection of vincristine intended for intravenous use); and *Ventricular size and isotope cisternography in patients with acute transient rises of intracranial pressure.* While there is no exact known effect of the combination of chemicals infused into Evelyn's brain, there is scientifically reliable evidence regarding the effect of increased intracranial pressure. Dr. Smith based a portion of his opinion, dealing with the mechanical effect of the increased amount of fluid in Evelyn's brain, upon such scientifically reliable information. However, he testified that these effects could not be separated from the effects of the medications, for which there is no peer-reviewed, published information.

The Ninth Circuit stated that there are occasionally good reasons why there is little scholarly research on a subject. *Clausen v. M/V New Carissa,* 339 F.3d 1049, 1060 (2003) (noting the lack of research on an oil spill's effect on oysters). In instances of "a rare occurrence" where there are few opportunities for scholarly research, the lack of published studies should not bar otherwise scientifically valid testimony. *Id.* The Ninth Circuit allowed for the use of differential diagnosis under *Daubert* to establish reliability of an expert's opinion. *Clausen,* 339 F.3d at 1057–58. Differential diagnosis involves an analysis of all hypotheses that might explain the patient's symptoms or mortality. *Id.* After identifying all of the potential causes of symptoms, the expert then engages in a process of eliminating hypotheses in order to reach a conclusion as to the most likely cause. *Id.* When using differential diagnosis a district court is justified in excluding the expert's testimony if the expert fails to offer an explanation why an alternative cause is ruled out. *Id.* The logic of the Ninth Circuit is sound.

■ Proximate cause can be shown by a "chain of circumstances from which the ultimate fact required to be established is reasonably and naturally inferable." *Sheridan v. St. Luke's Reg'l Med. Ctr.,* 135 Idaho 775, 785, 25 P.3d 88, 98 (2001). In Sheridan a newborn's abnormal jaundice was noticed by nurses but not reported to his doctor. Days later the child was readmitted to the hospital for high bilirubin levels which led to kernicterus, a form of cerebral palsy associated with high bilirubin levels, a symptom of which is jaundice. The hospital sought a directed verdict because Sheridan failed to present expert testimony on causation. This Court affirmed a denial of the motion for a direct verdict. The Court reasoned that a jury could reasonably and naturally infer, without the aid of expert testimony, that a breach of the standard of care during the first hospital stay was a proximate cause of the child's injuries from the chain of circumstances. *Sheridan,* 135 Idaho at 786, 25 P.3d at 99.

The district court erred in failing to admit Dr. Smith's testimony as to the mechanical effects of the infusion because he based his testimony upon sound scientific principles. It also erred in holding that Dr. Smith's testimony was not admissible regarding the chemical effects because the adverse effects can be inferred from the facts known to Dr. Smith.

## IV.

## CONCLUSION

The district court's decision granting summary judgment is reversed and the case is remanded for further proceedings. The Weeks are awarded costs on appeal.

Justices TROUT, EISMANN, BURDICK and JONES concur.