175 P.3d 186

Frank Lane FOSTER and Edith Foster, husband and wife, Plaintiffs–Appellants,

v.

John B. TRAUL, M.D., and Anesthesia Associates of Pocatello, P.A., Defendants–Respondents,

and

John Tatham, CRNA, and Pocatello Regional Medical Center, Defendants.

No. 33537.

Supreme Court of Idaho, Idaho Falls, October 2007 Term.

Dec. 24, 2007.

Lowell N. Hawkes, Chartered, Pocatello, for appellants. Lowell N. Hawkes and Ryan Lewis argued.

Quane Smith, LLP, Boise, for respondents Anesthesia Associates of Pocatello, P.A. and John B. Traul, M.D. Matthew F. McColl argued.

Racine, Olson, Nye, Budge & Bailey, Chartered, Pocatello, for respondent John B. Traul, M.D.

J. JONES, Justice.

Lane Foster sued Dr. John Traul, Anesthesia Associates (AA) and others, alleging medical malpractice and lack of informed consent. In 2005, this Court affirmed the district court's grant of summary judgment to Defendants on Foster's negligence claim, but vacated the judgment as to Foster's informed consent claim. Shortly thereafter, Defendants again moved for summary judgment. Foster submitted the Third Affidavit of Dr. Patton in opposition to the motion, which relied in part on two previously stricken affidavits. The district court first struck the portions of the Third Affidavit as to causation and injury, which referred to the prior affidavits. Next, the district court granted summary judgment in favor of Traul and AA because Foster failed to meet his burden with regard to the causation element of his informed consent claim. Foster appeals to this Court, arguing the district court erred in striking the affidavit, granting summary judgment to Traul and AA, and denying his motion to disqualify Defendants' attorneys. We vacate and remand to the district court for further proceedings.

## I.

Dr. Peter Schossberger performed back surgery on Lane Foster at Pocatello Regional Medical Center on December 15, 1998. Dr. John Traul, who is affiliated with AA, provided anesthesia services during the operation. Following the back surgery, Foster reported vision loss in his right eye and reduced vision in his left eye. Mrs. Foster immediately noticed that Foster's head and face were severely swollen. A doctor at the Moran Eye Center subsequently diagnosed Foster with bilateral posterior ischemic optic neuropathy (PION).

This Court issued an opinion in this case on July 21, 2005 affirming the district court's grant of summary judgment on Foster's medical negligence claim. *See Foster v. Traul,* 141 Idaho 890, 120 P.3d 278 (2005). The district court struck Dr. Patton's first two affidavits because they improperly relied on the inadmissible prelitigation screening panel report. Without these affidavits, Foster presented no expert testimony alleging breach of the standard of care. Therefore, this Court affirmed the district court's summary judgment on the negligence claim. However, this Court noted that the issue of informed consent is entirely separate from that of negligence: "A physician may be held liable under the doctrine of informed consent even if there was no negligence in the actual treatment of the patient." *Foster,* 141 Idaho at 894, 120 P.3d at 282 (citing *Sherwood v. Carter,* 119 Idaho 246, 251, 805 P.2d 452, 457 (1991)). Since Defendants had not chal-

lenged Foster's informed consent claim, Foster was under no burden to present evidence regarding informed consent. Thus, this Court vacated the district court's grant of summary judgment in favor of Traul and AA on the informed consent claim.

Shortly thereafter, Traul and AA filed a Second Motion for Summary Judgment. In support of their motion, Traul and AA filed the Affidavit of Nancy Newman, the "preeminent authority" on perioperative vision loss stemming from spine surgery and a board-certified and practicing neurologist. In addition, Traul filed a second affidavit in support of the motion.

After three separate continuances, Foster filed his brief in opposition to the Motion for Summary Judgment, along with the Third Affidavit of John Patton, M.D.[1] The first paragraph of Dr. Patton's affidavit states:

> I make this Affidavit on the basis of my personal and professional medical training, knowledge and experience, including review of depositions, medical record, and materials in this case (as referred to in my prior Affidavits) and the post-appeal affidavits of Defendant Traul (September 19, 2005) and Nancy Newman (September 20, 2005).

In addition he affies: "This Third Affidavit is made in supplement to the substance of my previous Affidavits of January 31, 2003 and March 30, 2003 which I incorporate herein by reference." Patton continues to detail his opinion that the anesthesia-related care of Foster was negligent and substandard, and "needlessly resulted" in Foster's blindness while under the care of Traul and personnel of AA.

Traul and AA moved to strike Dr. Patton's third affidavit, asserting several grounds, including Dr. Patton's incompetence to testify on issues of causation, Dr. Patton's refusal to present himself for a noticed deposition, and Dr. Patton's continued reliance upon the prelitigation screening panel's report. The district court granted the motion to strike finding that Dr. Patton was not qualified to testify on matters of ophthalmologic causation and that Dr. Patton's opinion testimony continued to be tainted by his reliance on the panel report. The district court subsequently granted the Second Motion for Summary Judgment, finding Foster no longer had qualified testimony to support the claim that Foster's injuries were a result of submitting to the anesthesia on December 15, 1998. Foster timely appealed to this Court.

## II.

In this case, we address whether the district court abused its discretion by striking the Third Affidavit of Dr. Patton, finding him incompetent to testify as to matters of ophthalmologic causation; whether the district court erred when it granted summary judgment, holding that Foster failed to create a genuine issue of material fact on the causation element of his informed consent claim; and whether the district court erred in denying Foster's motion to disqualify defense counsel because its newly hired associate was a former law clerk who worked on the prior summary judgment decision in this case.

## A.

On appeal from the grant of a motion for summary judgment, this Court applies the same standard used by the district court originally ruling on the motion. *Carnell v. Barker Mgmt., Inc.*, 137 Idaho 322, 326, 48 P.3d 651, 655 (2002). Summary judgment is proper "if the pleadings, depositions,

---

1. Foster also filed the Affidavit of Dr. Elizabeth Frost eight months after the Motion for Summary Judgment, which explained in detail why anesthesiologists were qualified to render opinions with respect to blindness during surgery. Traul and AA objected on the basis that the affidavit was untimely. Foster pointed to the district court's request during a previous hearing that the parties submit "whatever they want." According to the transcript, the judge requested additional legal authority to assist his decision. Striking the affidavit as untimely, the district court noted: "Now, (1) after the Court had said that it didn't want any further briefing on the Motion for Summary Judgment and (2) after three extensions of time to respond to the Motion for Summary Judgment (each time over the objection of Defendants), the Plaintiffs want to continue to respond to the Motion for Summary Judgment." The district court properly exercised discretion to strike this affidavit.

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Idaho R. Civ. P. 56(c). All disputed facts are to be construed liberally in favor of the nonmoving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the nonmoving party. *Id.*, 137 Idaho at 327, 48 P.3d at 656 (citing *Jacobson v. State Farm Mut. Auto. Ins. Co.*, 136 Idaho 171, 173, 30 P.3d 949, 951 (2001)). Summary judgment is appropriate where the nonmoving party bearing the burden of proof fails to make a showing sufficient to establish the existence of an element essential to that party's case. *Id.* (citing *Jensen v. Am. Suzuki Motor Corp.*, 136 Idaho 460, 463, 35 P.3d 776, 779 (2001)).

The question of admissibility of affidavits under Idaho Rule of Civil Procedure 56(e) is a threshold question to be analyzed before applying the liberal construction and reasonable inference rules required when reviewing motions for summary judgment to determine whether the evidence is sufficient to create a genuine issue for trial. *Rhodehouse v. Stutts*, 125 Idaho 208, 211, 868 P.2d 1224, 1227 (1994). The Court must look at the affidavit and determine whether it alleges facts, which if taken as true, would render the testimony admissible. *Dulaney v. St. Alphonsus Reg'l Med. Ctr.*, 137 Idaho 160, 163, 45 P.3d 816, 819 (2002).

When reviewing the trial court's evidentiary rulings, this Court applies an abuse of discretion standard. An abuse of discretion review requires a three-part inquiry: (1) whether the lower court rightly perceived the issue as one of discretion; (2) whether the court acted within the boundaries of such discretion and consistently with any legal standards applicable to specific choices; and (3) whether the court reached its decision by an exercise of reason. *McDaniel v. Inland Northwest Renal Care Group–Idaho, LLC*, 144 Idaho 219, 221–22, 159 P.3d 856, 858–59 (2007) (citing *Schwan's Sales Enter., Inc. v. Idaho Transp. Dept.*, 142 Idaho 826, 831, 136 P.3d 297, 302 (2006)). A district court has broad discretion in determining whether a witness is qualified as an expert, and admissibility of expert testimony will not be overturned absent an abuse of that discretion. *Weeks v. E. Idaho Health Serv.*, 143 Idaho 834, 837, 153 P.3d 1180, 1183 (2007) (citing *Warren v. Sharp*, 139 Idaho 599, 605, 83 P.3d 773, 779 (2003)).

## B.

To establish a claim of informed consent, the plaintiff must prove three elements: nondisclosure, causation, and injury. *Sherwood v. Carter*, 119 Idaho 246, 257, 805 P.2d 452, 463 (1991). The district court did not strike Dr. Patton's testimony concerning nondisclosure, but did strike the portions of the affidavit relating to causation and injury, stating there was "no foundation for Dr. Patton's opinions that Mr. Foster had been injured as a result of submitting to the medical procedure performed by Dr. Traul." The court held that Dr. Patton did not have qualifications to render a medical opinion as to matters of ophthalmology. Further, based on Paragraph 1 of the affidavit, where he refers to his prior affidavits, the court struck the portions of Dr. Patton's Third Affidavit that dealt with causation and injury to the extent the prelitigation screening panel's report deals with the issues of causation and injury.

Foster argues that the question of causation is really a jury question—whether a reasonable person would have chosen no treatment or a different course of treatment had he been adequately informed. In addition, Foster asserts Dr. Patton is indeed qualified to render a medical opinion as to matters of ophthalmology because he was familiar with post-surgical blindness as related to anesthesia. According to Foster, the district court abused its discretion and "picked between affidavits" by "buying" the challenged conclusion of Dr. Newman that Foster's blindness could not have been prevented.

Respondents argue that the district court properly acted as a "gatekeeper" under Idaho Rule of Evidence 702 to determine Dr. Patton was incompetent to testify on issues of medical causation relating to ophthalmolo-

gy. Therefore, they argue the district judge properly exercised his discretion in striking the Third Affidavit of Dr. Patton.

The test to determine whether a witness is qualified as an expert is "not rigid" and can be found in Idaho Rule of Evidence 702. *Weeks*, 143 Idaho at 837, 153 P.3d at 1183 (citing *West v. Sonke*, 132 Idaho 133, 138–39, 968 P.2d 228, 233–34 (1998)). Idaho Rule of Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

A qualified expert is one who possesses "knowledge skill, experience, training, or education." *Weeks*, 143 Idaho at 837, 153 P.3d at 1183. Formal training is not necessary, but practical experience or special knowledge must be shown to bring a witness within the category of an expert. *Id.* (citing Warren, 139 Idaho at 605, 83 P.3d at 779). The proponent of the testimony must lay foundational evidence showing that the individual is qualified as an expert on the topic of his or her testimony. *Weeks*, 143 Idaho at 837, 153 P.3d at 1183 (citing *State v. Burrow*, 142 Idaho 328, 330, 127 P.3d 231, 233 (Ct.App. 2005)).

Dr. Patton is a board-certified anesthesiologist. His Third Affidavit details the basis of his familiarity with the anatomy of blood supply to the eyes as relates to anesthesia care and potential for injury to the eyes. Dr. Patton testifies it is his professional medical opinion based on reasonable medical probability that the anesthesia-related care of Foster, including lack of proper informed consent, was negligent and substandard and "needlessly resulted" in Foster's blindness while under the care of Traul and AA. In *Weeks*, the district court held that the expert was not qualified to testify as an expert witness on the issue of causation. This Court reversed and held that the expert witness' education, specialized knowledge, and thirty years' experience established that he met the test outlined in Idaho Rule 702. *Weeks*, 143 Idaho at 837, 153 P.3d at 1183.

Similarly, Dr. Patton meets the test outlined in the rule based on his education, specialized knowledge, and experience as an anesthesiologist. Thus, the district court erred in finding Dr. Patton incompetent to testify regarding Mr. Foster's blindness as related to the anesthesia care during his surgery.

In addition, the district court held that Dr. Patton, an anesthesiologist, was not competent to testify as to ophthalmologic issues. However, this Court has specifically held there is no requirement that an expert witness must be board-certified in the same specialty as the physician against whom medical malpractice is alleged to establish a case of medical malpractice. *Pearson v. Parsons*, 114 Idaho 334, 337, 757 P.2d 197, 200 (1988). "[T]o fulfill the requirement of presenting expert testimony in a medical malpractice case against a board-certified specialist, plaintiff may offer the testimony of a physician who is not board-certified in the same specialty as the defendant, so long as the testimony complies with the requirements of I.C. §§ 6–1012 and 6–1013." *Id.* In this case, Dr. Patton was an anesthesiologist. Dr. Traul was also an anesthesiologist. Nevertheless, the district court seems to require an ophthalmologist from the plaintiff in order to establish causation. Dr. Patton's specialty is not determinative. One would not expect an ophthalmologist to be present when the anesthesiologist discusses with his patient the potential risks that anesthesia care might pose to his eyesight during a surgery. One would hope that, if there were risks which anesthesia care could pose during a surgery, the anesthesiologist would have the knowledge and capability of so informing the patient. After all, the anesthesiologist is in the best position to inform and protect the patient and certainly should know of the type of risks that may exist.

The only question is whether Dr. Patton is qualified under Rule 702. As discussed above, Dr. Patton is qualified under Rule 702 based on his experience as an anesthesiologist. Thus, the district court erred in striking the portions of Dr. Patton's affidavit re-

lating to causation and injury.[2] The district court did not act within the boundaries of its discretion and consistently with the proper legal standards when it found "no foundation for Dr. Patton's opinions that Mr. Foster had been injured as a result of submitting to the medical procedure performed by Dr. Traul."

### C.

 As noted above, in order to establish a claim based on the doctrine of informed consent, a patient must prove three basic elements: nondisclosure, causation, and injury. *Sherwood,* 119 Idaho at 257, 805 P.2d at 463. The district court declined to grant summary judgment as to the nondisclosure element of informed consent, finding the remaining unstricken portions of Dr. Patton's Third Affidavit sufficient to survive summary judgment on this issue. Similarly, the court declined to grant summary judgment to Defendants with regard to the injury element, because there was evidence Foster had injuries to his eyes after the surgery. Thus, the only basis upon which the district court granted summary judgment was as to the causation element of informed consent. This resulted from the court's striking of Dr. Patton's causation testimony.

The district court applied *Anderson v. Hollingsworth,* 136 Idaho 800, 805, 41 P.3d 228, 233 (2001), to hold there are two "subelements" to causation. First, the plaintiff must show whether one would have consented to the procedure if there had been sufficient disclosure. As to this element, the district court declined to grant summary judgment. Second, the court said Foster must show that "the breach of the nondisclosure element of informed consent was the proximate cause of Mr. Foster's injuries." Since the district court found Dr. Patton incompetent to testify as to this element of causation, Foster presented no evidence as to causation. On the other hand, the court points to Dr. Newman's testimony that the exact cause of PION is unknown. Since Foster failed to present expert testimony as

to this "sub-element" of causation, the district court granted summary judgment in favor of Dr. Traul and AA.

Foster argues the district court improperly equated causation in an informed consent claim with medical negligence. According to Foster, he satisfied the causation element by demonstrating he would not have consented to the procedure if he had been informed of the material risks involved. Foster claims causation in an informed consent case is a fact question that focuses upon the process of giving consent—it is a jury question that considers the reasonable person standard and not expert medical testimony. Thus, Foster argues he did not need an expert to testify as to causation to survive a motion for summary judgment. Foster continues to argue that even if the district court did not err as to the "sub-element" of causation, questions of fact still preclude summary judgment because Mr. Foster would not have ended up blind had he not submitted to the surgery.

Respondents argue the district court properly granted their motion for summary judgment below. Specifically, Dr. Traul and AA argue that Foster was obligated to prove that he was injured by the anesthesia care, for which Dr. Traul and AA were responsible. Since the Plaintiff failed to present evidence on this matter, Defendants contend that summary judgment was proper.

 Informed consent is separate from negligence. *Foster,* 141 Idaho at 894, 120 P.3d at 282 (citing *Sherwood,* 119 Idaho at 251, 805 P.2d at 457). A physician may be held liable on an informed consent theory even though the physician is free from personal negligence. *Sherwood,* 119 Idaho at 251, 805 P.2d at 457. The doctrine of informed consent is the general principle of law that a physician has a duty to disclose to his patient those risks of injury which might result from a proposed course of treatment. *Id.*

 The district court erred when it held that Foster must show two types of causation

---

2. Foster does not appeal the district court's holding that the portions of the affidavit referring to his previously stricken affidavits should be stricken. Thus, those references remain stricken.

Notwithstanding those references, found in the first and final paragraphs of the Third Affidavit, the affidavit meets the standards of Rule 702.

under this element. The court's conclusion may have been based on an erroneous reading of *Anderson v. Hollingsworth*. There, the Court said, citing *Sherwood*, that:

> To prove causation the plaintiff must show by a preponderance of the evidence that a prudent person in the patient's position would not have consented to the proposed procedure had full and adequate disclosure of the significant risks been made at the time consent was originally given . . .

> Thus, in order to prove causation [the patient] must show by a preponderance of evidence that 'a reasonable person would have chosen no treatment or a different course of treatment had he or she been adequately informed by the physician.'"

136 Idaho at 805, 41 P.3d at 233. This is a correct recitation of the causation element of an informed consent case and it is only one type of causation. The district court correctly held that Foster presented sufficient facts to withstand summary judgment on this element. The confusion may have resulted from the next sentence in *Anderson*— "Anderson must also prove she has been injured as a result of submitting to the medical procedure." *Id.* Injury here is not a part of causation but, rather, the third element of an informed consent claim.

■ To show *injury*, the plaintiff must prove his injuries were a direct and proximate cause of the defendant's failure to disclose risks and alternatives to the patient. The injury must be as a result of the undisclosed material risk, rather than some unrelated risk, such as falling off of the operating table or faulty work on the part of medical personnel not involved in anesthesia care. The district court below denied summary judgment as to nondisclosure and injury, which has not been appealed here. However, in order to establish the injury element the patient must show that the injury arose out of a material risk of the surgery that should have been disclosed to him. It is irrelevant whether Traul's and AA's actions caused the injury. The question is whether Traul's and AA's failure to fully disclose risks and alternative treatments caused Foster to sustain an injury that is related to a material risk that the physician failed to disclose.

There is a material question of fact whether Foster was injured as a result of the surgery. Dr. Newman, Defendants' expert, testified that PION is a rare perioperative complication that occurs 1 in 60,000 to 1 in 125,000 of all anesthetics. It occurs more frequently in prolonged complicated spinal procedures in the prone position, estimated to be 1 in 1,000. Dr. Newman's affidavit stated that the exact cause of PION is unknown, but possible causes include surgery factors, perioperative factors and certain patient factors, such as unrecognized hypertension. In Mr. Foster's case specifically, possible factors at play include the length of surgery in the prone position, Foster's vascular risk factors of hypertension, disease and stroke, and an anatomic predisposition that could not have been recognized preoperatively. Finally, Dr. Newman claims the PION here was an "entirely unpredictable event that could not have been prevented" by the doctors here.

In response, Dr. Patton addresses the issue of injury in his affidavit. First, Dr. Patton asserts Dr. Newman's statement that this was an "entirely unpredictable" event does not mean that Mr. Foster's blindness would have occurred despite the conditions that took place during his surgery. Patton notes that Dr. Traul cannot state there was any pre-anesthesia informed consent conversation, and the record does not indicate Dr. Traul exercised proper oversight of Foster. Patton also claims the possibility that blood supply to the posterior part of the nerve from small vessels may be easily compressed by fluid buildup in that area "is fundamental anatomy taught to anesthesiologists." "Maintaining fluid balance and blood pressure is the essence of the role of anesthesia in any surgery." Dr. Patton testifies it is undisputed in this case that the blindness of Foster resulted from "ischemia" or a loss of blood supply to the eyes. Finally, he states that "Mr. Foster's December 15, 1998 blindness [was] indeed preventable by proper anesthesia care."

Viewing all evidence in a light most favorable to Foster, the nonmoving party, there is a genuine issue of material fact on the injury element of his informed consent claim. In

this case, all experts agree that a certain percentage of patients would sustain a vision injury from the procedure. Although we may not know precisely how the injury occurred, or what percentage would suffer such injury, the evidence presented demonstrates the injury was a risk of the procedure, and that Foster sustained the injury. This evidence is sufficient to preclude summary judgment as to injury. The statements contained in the affidavits, taken as true, together with all legitimate inferences that flow therefrom, were sufficient to establish the existence of genuine issues of material fact. The district court erred when it granted Defendants' motion for summary judgment.

### D.

■ Following Dr. Traul's Second Motion for Summary Judgment, Foster filed a Motion to Disqualify Dr. Traul and AA's counsel. Prior to joining Quane Smith, Ms. Carole Wesenberg served a judicial law clerkship with District Judge Smith. During this time, Ms. Wesenberg assisted the district court in the preparation, research, and writing of the court's prior decision granting summary judgment to the Defendants in this matter. Ms. Wesenberg subsequently joined Quane Smith's Idaho Falls office. According to Dr. Traul's lawyers, the only Quane Smith lawyers who have handled this case are Matthew McColl and Richard Stubbs of Boise. Ms. Wesenberg's supervisor in Idaho Falls has not allowed her to be involved in any matters in which she was involved as a law clerk, and Ms. Wesenberg has not and will not receive any portion of the fees from such lawsuit, nor has she had access to any files in the Quane Smith Boise office regarding this lawsuit.

■ The decision to grant or deny a motion to disqualify counsel is within the discretion of the trial court. *Weaver v. Millard,* 120 Idaho 692, 696, 819 P.2d 110, 114 (Ct. App.1991). Thus, the abuse of discretion standard, described above, applies.

Idaho Rule of Professional Conduct 1.12(a) provides that a lawyer shall not represent anyone in connection with a matter in which the lawyer participated personally and substantially as a law clerk, unless all parties to the proceeding give informed consent, con-

firmed in writing. According to subsection (c), if a lawyer is disqualified under (a), no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in the matter unless: (1) the disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom; and (2) written notice is promptly given to the parties and any appropriate tribunal to enable them to ascertain compliance with the provisions of this rule. Idaho R. Prof. Conduct 1.12(c) (2005). "Screened" denotes the isolation of a lawyer from any participation in the matter through the timely imposition of procedures within a firm that are reasonably adequate under the circumstances to protect information that the isolated lawyer is obligated to protect under these Rules or other law. Idaho R. Prof. Conduct 1.0(k) (2005).

■ The Preamble to the Idaho Rules of Professional Conduct provides that "the Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies." Idaho R. Prof. Conduct Preamble. The Preamble cautions that "the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons." *Id.* In *Weaver,* the Court of Appeals began with similar principles:

> The moving party has the burden of establishing grounds for disqualification. The goal of the court should be to shape a remedy which will assure fairness to the parties and the integrity of the judicial process. Whenever possible, courts should endeavor to reach a solution that is least burdensome to the client.

*Weaver,* 120 Idaho at 697, 819 P.2d at 115 (internal citations omitted). When the motion to disqualify comes from an opposing party, the motion should be viewed with caution. *Id.* The Court of Appeals applied a four-part test to determine whether an appearance of impropriety alone will give a party standing to interfere with an adverse party's choice of counsel:

> (1) Whether the motion is being made for the purposes of harassing the defendant,

(2) Whether the party bringing the motion will be damaged in some way if the motion is not granted,

(3) Whether there are any alternative solutions, or is the proposed solution the least damaging possible under the circumstances, and

(4) Whether the possibility of public suspicion will outweigh any benefits that might accrue to continued representation.

*Weaver,* 120 Idaho at 698, 819 P.2d at 116.[3]

 In the present case, the district court applied the four-part test established by the court of appeals in *Weaver.* Since motions to disqualify are generally disfavored and the *Weaver* factors suggested disqualification was not required, the court declined to disqualify Quane Smith, even though counsel did not strictly comply with Rule 1.12.

The district court did not abuse its discretion in applying these factors to this case. Although an attorney might have a mandatory duty to disclose a potential conflict, the Court does not have a mandatory duty to disqualify. Although Quane Smith failed to provide notice to the tribunal immediately upon the hiring of Ms. Wesenberg, Ms. Wesenberg was in fact properly screened from participation in the case. Further, Foster will not be damaged if the motion is not granted—there is very little benefit to be had at this point in the case by disqualifying defense attorneys. Finally, it is worth note that Foster did not promptly file the Motion to Disqualify upon learning of Ms. Wesenberg's employ.

The district court awarded $2,271.40 in costs to the Defendants below, based on Idaho Rule of Civil Procedure 54(d)(1)(A)[4], because Traul and AA prevailed on their motion for summary judgment. Since we vacate the summary judgment, the award of costs is similarly vacated.

## III.

We vacate the district court's grant of summary judgment and remand the case to the district court for further proceedings consistent with this opinion. Foster is awarded his costs on appeal.

Chief Justice EISMANN, and Justices BURDICK, HORTON and Justice Pro Tem BUSH concur.

---

3. In *Weaver,* the Court of Appeals addressed a motion to disqualify under Rules 1.7(b) (dealing with situations where an attorney's representation of one client may be materially limited by representation of another client) and 1.10(a) (imputation of conflicts of interest). 120 Idaho at 697, 819 P.2d at 114.

4. Idaho R. Civ. P. 54(d)(1)(A) provides: "Except when otherwise limited by these rules, costs shall be allowed as a matter of right to the prevailing party or parties, unless otherwise ordered by the court."