IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 39669

| | | |
|---|---|---|
| CURTIS JAY JOHNSON, | ) | 2013 Unpublished Opinion No. 586 |
| | ) | |
| Plaintiff-Appellant, | ) | Filed: July 19, 2013 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| MIKE MCPHEE and JCAV, LLC, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendants-Respondents. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Benjamin R. Simpson, District Judge.

Summary judgment in favor of defendants on claim of negligent infliction of emotional distress, <u>affirmed</u>.

Curtis Jay Johnson, Coeur d'Alene, pro se appellant.

Respondents did not participate on appeal.

_____

GUTIERREZ, Chief Judge

Curtis Jay Johnson appeals from the summary judgment in favor of Mike McPhee and JCAV, LLC on Johnson's claim of negligent infliction of emotional distress, granted by the district court on remand from this Court. For the reasons set forth below, we affirm.

## I.

## FACTS AND PROCEDURE

The facts of this case are more fully recited in this Court's prior opinion, *Johnson v. McPhee*, 147 Idaho 455, 210 P.3d 563 (Ct. App. 2009). We limit our recitation to only those facts relevant to this appeal.

In December 2005, Johnson filed suit alleging JCAV, a real estate company, and McPhee, its agent, breached a contract to compensate him for his services in a subdivision development. Johnson further contended that JCAV was negligent in its supervision of McPhee concerning performance of the alleged contract and concerning McPhee's alleged abusive

1

behavior. Additionally, Johnson alleged that McPhee intentionally and negligently inflicted emotional distress on him, for which JCAV should be held vicariously liable.

With regard to his claim for negligent infliction of emotional distress (NIED), Johnson alleged that from early 2003 to August 2003, McPhee verbally abused him, often in a sexually crude manner, including demands from McPhee that Johnson perform or participate in sexual acts with him. According to Johnson, McPhee also belittled and demeaned Johnson's capabilities as a real estate agent. Johnson asserted that the abuse abated for a time, but resumed in 2005. The abuse was largely verbal in nature, in the form of profane and derogatory language. Johnson alleged the verbal abuse caused him severe emotional distress and that he attempted to communicate this to McPhee on more than one occasion. Johnson produced evidence that he suffered from post-traumatic stress disorder, was at times rendered nearly immobile due to his emotional state, once fainted while discussing McPhee's alleged abuse with a business acquaintance, and generally suffered "strange chaotic bodily experiences."

McPhee and JCAV each moved for summary judgment as to all of Johnson's claims. The district court granted the motions as to each claim, including the claim for NIED on the basis that McPhee's conduct was not sufficiently extreme and outrageous. On direct appeal to this Court, we held that summary judgment was not appropriate on that basis because extreme and outrageous conduct is not an element of a claim for NIED. *Id*. at 465-66, 210 P.3d at 573-74. We next considered whether summary judgment was appropriate under the correct legal standard and held that the evidence was sufficient to permit an inference that Johnson could satisfy his burden of proof on all elements of a claim for NIED. We, therefore, vacated the judgment as to the NIED claim and remanded the case with instructions that the district court consider whether Johnson's evidence met the elements for a claim of NIED. Particularly, this Court emphasized that the relevant question would be whether the evidence Johnson presented was sufficient for a court to find that a risk of serious harm to Johnson was foreseeable by McPhee when the conduct occurred. *Id.* at 467, 210 P.3d at 575. On remand, the district court again granted summary judgment in favor of McPhee and JCAV, and Johnson appeals.[1]

---

[1]     JCAV has not participated in this lawsuit since the time it was initially remanded by this Court in 2009. Shortly after remand, JCAV's attorney withdrew, and about six months after that, JCAV filed bankruptcy.

## II.

## ANALYSIS

Johnson asserts that the district court altered the legal issue as framed by this Court; misconstrued and mitigated the evidence in favor of the moving parties; ignored and mitigated the context from which the cause of action arose; and erred by ignoring the extreme nature of McPhee's conduct. The first of these arguments essentially alleges that the district court misinterpreted and therefore applied the wrong legal standard with regard to the foreseeability requirement. The remaining three arguments can be consolidated to an allegation that the district court construed disputed facts and evidence and drew inferences against the nonmoving party. Consequently, Johnson believes the district court, based on the misconstrued inferences, wrongly determined that Johnson failed to show a genuine issue of material fact as to the elements of his NIED claim. Respondents have not participated in this appeal.

### A.     Legal Standard on Remand

We address first whether the district court altered the legal standard on remand. In our previous opinion, this Court stated:

> Negligent infliction of emotional distress is simply a category of the tort of negligence, requiring the elements of a common law negligence action. *See Nation v. State, Dep't of Correction*, 144 Idaho 177, 189-91, 158 P.3d 953, 965-66 (2007); *Black Canyon Racquetball Club, Inc. v. Idaho First Nat'l Bank*, 119 Idaho 171, 175-77, 804 P.2d 900, 904-06 (1991); *Brown v. Matthews Mortuary, Inc.*, 118 Idaho 830, 837, 801 P.2d 37, 44 (1990). These elements are: (1) a duty recognized by law requiring the defendant to conform to a certain standard of conduct; (2) a breach of that duty; (3) a causal connection between the conduct and the plaintiff's injury; and (4) actual loss or damage. *Brooks v. Logan*, 127 Idaho 484, 489, 903 P.2d 73, 78 (1995); *Black Canyon Racquetball Club, Inc.*, 119 Idaho at 175-76, 804 P.2d at 904-05; *Nation*, 144 Idaho at 189, 158 P.3d at 965. In addition to these elements, for a claim of negligent infliction of emotional distress to lie, there must be some physical manifestation of the plaintiff's emotional injury. *Black Canyon Racquetball Club, Inc.*, 119 Idaho at 177, 804 P.2d at 906; *Czaplicki v. Gooding Joint School Dist. No. 231*, 116 Idaho 326, 332, 775 P.2d 640, 646 (1989); *but see Brown*, 118 Idaho at 837, 801 P.2d at 44 (adopting an exception to physical manifestation requirement in some cases involving mishandling of dead bodies).

*Johnson*, 147 Idaho at 466, 210 P.3d at 574. Further, we highlighted that foreseeability is a component of both duty and causation; an individual has a duty to exercise ordinary care to prevent *foreseeable* risks of harm, and proximate cause (or legal responsibility) focuses on

3

whether it was reasonably *foreseeable* that harm would flow from the defendant's negligent conduct. *Id.* at 467, 210 P.3d at 575. Accordingly, where the facts involve a plaintiff, such as Johnson, who is alleging injury based on a special vulnerability, we noted that a defendant has no duty to avoid a risk of harm because of a particular or special vulnerability unless, under the circumstances, that defendant knew or should have known about the plaintiff's special vulnerability. *Id.* at 468, 210 P.3d at 576. In other words, the defendant can be held liable upon a NIED claim for harmful conduct only if the plaintiff establishes that the defendant had a duty to the plaintiff because the circumstances are such that a reasonable person would have been aware of the plaintiff's special vulnerability, making otherwise innocuous conduct harmful to the plaintiff. Therefore, we concluded that "the existence or non-existence of a duty of care and proximate causation in this case turns upon whether McPhee was aware of Johnson's abnormal vulnerability and the consequent risk of serious emotional injury from McPhee's insults." *Id.*

Johnson asserts the district court erred by looking at whether McPhee was put on notice of Johnson's special vulnerability, rather than applying the correct legal standard of whether McPhee had knowledge or was aware of Johnson's vulnerability or whether McPhee should have known of it. Johnson argues the district court substantially altered the legal question by limiting its inquiry to whether Johnson notified McPhee of Johnson's special vulnerability.

In applying the standard outlined in our opinion and prior case law, the district court clearly recognized that foreseeability was the issue, stating, "[O]n remand, this Court focuses upon the elements of duty and causation, in that their existence depends upon a finding of foreseeability." Relative to the issue of whether McPhee was or should have been aware of or had sufficient knowledge of Johnson's particular vulnerability, the district court stated the following:

> [T[he record mainly consists of vague references to "abuse" and generalized assertions that Johnson's mental health suffered as a result of many factors in his life--PTSD, a divorce, financial difficulties, and "abuse" by McPhee. The record only appears to contain a single statement,[2] however, regarding whether McPhee may have been apprised of Mr. Johnson's delicate mental and emotional state. Johnson asserts that in 2005 he told McPhee that his crude sexual advances negatively impacted Johnson. Of course, assuming without deciding that McPhee

---

[2] The statement referenced by the district court is Johnson's allegation that "in 2005 I went to his office and I said, Mike, you know, that really f***ed me up when you asked me to suck my d**k."

4

made any such sexual comment to Johnson, this statement was made in 2003, and cannot be considered by the Court due to the applicable statute of limitations. More importantly, the question is whether Johnson's statement was sufficient to put McPhee on notice that any further derogatory comments, or comments involving foul language or concerning whether Mr. Johnson suffered from a mental illness, would result in emotional distress to Mr. Johnson. This Court holds that Mr. Johnson's vague statement to Mr. McPhee does not create a genuine issue as to whether Mr. McPhee was put on notice that Mr. Johnson was hindered by a particularly sensitive emotional state . . . .

The district court considered whether McPhee was *apprised of* or had *notice* of Johnson's special vulnerability. Based on the above passage, Johnson argues the district court focused on actual notice. McPhee certainly would have been aware of or had knowledge of Johnson's particular frailty had he received actual notice. However, the standard is not whether McPhee was put on actual notice of Johnson's particular vulnerability on the basis of a single statement from Johnson to McPhee. Rather, the question is, considering all of the information available to McPhee at the time, was he, or should he have been aware of Johnson's particular vulnerability. Had the district gone no further than to evaluate the single statement and whether it put McPhee on actual notice of Johnson's special vulnerability, we may have been inclined to agree with Johnson.

Nonetheless, the context of the passage and further analysis by the district court show the district court took into account additional evidence and the surrounding circumstances to determine if McPhee knew or should have known that his conduct would be harmful to Johnson. As the district court mentioned, the record contains evidence that Johnson's mental health suffered as a result of many factors, such as post-traumatic stress disorder, a divorce, financial difficulties and alleged abuse by McPhee, all of which McPhee may or may not have known. The district court recognized that the events referenced in Johnson's statement to McPhee, *i.e.* McPhee's demands that Johnson participate in sexual acts with McPhee, could not form the basis of Johnson's claim for NIED since it was barred by the statute of limitations. The evidence being time-barred, nonetheless, does not reduce its relevance to the question of McPhee's awareness of Johnson's particular frailty. Although the district court purported to exclude this evidence from consideration, unduly limiting its scope of inquiry, the district court did take it into account for purposes of determining whether Johnson's 2005 statement to McPhee was enough to meet the foreseeability requirement in the NIED claim. The district court determined

5

the statement was vague and would not have made McPhee aware that any further derogatory comments would result in emotional distress.

The district court also took into account other statements that Johnson alleged he made to McPhee:

> Johnson also avers that he told McPhee from April of 2004, to July of 2005, multiple times, about his "attempts to heal" and his "strange chaotic bodily experiences.". . . However, there is no indication that Mr. Johnson told McPhee that his attempts to heal, or his strange bodily experiences, were somehow catalyzed or exacerbated by McPhee's statements to Johnson. . . . [T]his Court finds that these statements are insufficient to have put McPhee on notice that his comments to Johnson would result in emotional distress sufficient to state a claim for NIED.

Finally, the district court noted evidence in the record that Johnson initiated contacts with McPhee after the time he alleged McPhee's conduct caused him emotional distress. The district court found that this "further highlighted" the lack of a genuine issue.

As noted above, whether McPhee had knowledge or was aware of Johnson's abnormal vulnerability and the consequent risk of serious emotional injury from McPhee's insults determines the existence or nonexistence of a duty of care and proximate cause in Johnson's NIED action. An individual is not required to personally inform a potential defendant that his particular vulnerability is worsened by that defendant's conduct. Such a requirement would impose an extra burden on the plaintiff that is not supported anywhere in the law and would replace foreseeability of harm with a requirement of actual knowledge that the conduct is certain to cause harm. Here, the district court did take into account whether Johnson actually told McPhee that McPhee's conduct was harmful to Johnson. However, in reading the district court's order in whole, Johnson fails to show that the district court substantially altered the legal standard by limiting its inquiry to whether McPhee had actual notice. The district court also considered whether other factors at play in Johnson's life would have made McPhee aware of Johnson's special vulnerability such that McPhee's conduct would foreseeably cause harm to Johnson.

## B. Disputed Facts

Johnson argues that the district court misconstrued and mitigated the evidence in favor of the moving parties, ignored or severely mitigated the context within which the NIED occurred, and ignored or missed the severity and extreme nature of McPhee's conduct, the case in general, and Johnson's injury. These arguments amount to an assertion by Johnson that the district court

6

construed the facts against him, and drew inferences in McPhee's favor based on disputed evidence. Based on the misconstrued inferences, Johnson asserts the district court erred in finding that McPhee was unaware or lacked knowledge of Johnson's conditions and that no genuine issue of material of fact existed for Johnson to survive summary judgment.

On appeal, we exercise free review in determining whether a genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. *Edwards v. Conchemco, Inc.*, 111 Idaho 851, 852, 727 P.2d 1279, 1280 (Ct. App. 1986). Summary judgment under Idaho Rule of Civil Procedure 56(c) is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Although the burden of showing an absence of a genuine issue of fact falls to the moving party, the nonmoving party must have set forth specific facts showing that there is a genuine issue for trial. *P.O. Ventures, Inc. v. Loucks Family Irrevocable Trust*, 144 Idaho 233, 237, 159 P.3d 870, 874 (2007). When assessing a motion for summary judgment, all disputed facts are to be liberally construed in favor of the nonmoving party. *Collection Bureau, Inc. v. Dorsey*, 150 Idaho 695, 698, 249 P.3d 1150, 1153 (2011). Disputed facts, if resolved in favor of the nonmoving party, that still fall short of establishing an element of the claim, are not material and do not stand in the way of summary dismissal. *See Clark v. The Spokesman-Review*, 144 Idaho 427, 431, 163 P.3d 216, 220 (2007). When the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case on which that party will bear the burden of proof at trial, the moving party is entitled to judgment in its favor. *P.O. Ventures, Inc.*, 144 Idaho at 237, 159 P.3d at 874.

When a case will be tried before a jury, all disputed facts are to be construed liberally in favor of the nonmoving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the nonmoving party. *Foster v. Traul*, 145 Idaho 24, 28, 175 P.3d 186, 190 (2007). However, none of the parties requested a jury trial in the case. When an action will be tried before a court without a jury, the court may, in ruling on a motion for summary judgment, draw the most probable inferences arising from the undisputed evidentiary facts despite the possibility of conflicting inferences. *Losee v. Idaho Co.*, 148 Idaho 219, 222, 220 P.3d 575, 578 (2009). Drawing probable inferences under such circumstances is permissible because the court, as trier of fact, would be responsible for resolving conflicting inferences at trial. *Id.* Thus, although conflicting and disputed evidence must be viewed in a light favorable

to the nonmoving party, conflicting inferences need not be. *Banner Life Ins. Co. v. Mark Wallace Dixson Irrevocable Trust*, 147 Idaho 117, 124, 206 P.3d 481, 488 (2009).[3]

In our opinion regarding Johnson's first appeal, we concluded that "drawing all permissible inferences in favor of Johnson, [the] evidence is sufficient to permit an inference that McPhee was aware of Johnson's unique emotional delicacy such that he foresaw or reasonably should have foreseen that serious emotional harm would result from his alleged verbal abuse of Johnson." *Johnson*, 147 Idaho at 468-69, 210 P.3d at 576-77. However, we also recognized that a jury trial was not requested, and therefore, the district court was not obligated to draw all inferences in Johnson's favor. *Id.* The district court, when addressing summary judgment prior to the first appeal, had granted the motion on other grounds and had not addressed possible inferences. Accordingly, we declined to take on the task of drawing reasonable inferences for the first time on appeal, an exercise which is first committed to the trial court. In looking at whether the evidence was sufficient to show duty and causation, we stated that the district court could "draw the inferences it deems most reasonable concerning whether McPhee had knowledge or sufficient notice that Johnson's mental or emotional fragility made him vulnerable to serious emotional distress from McPhee's alleged misconduct." *Id*. at 469, 210 P.3d at 577.

As the trier of fact in this case, the district court was permitted to draw reasonable inferences from the same record and the same facts to determine whether summary judgment in favor of McPhee was appropriate. Because the district court took all the facts alleged by Johnson to be true, as is directed by the standards for deciding a motion for summary judgment, and each party relied on substantially the same facts in making arguments, the district court was

---

[3]   *See also Riverside Dev. Co. v. Ritchie*, 103 Idaho 515, 518-520, 650 P.2d 657, 660-62 (1982). In *Riverside Dev. Co.*, the district court sat as the trier of fact in the case. The Idaho Supreme Court explained that when parties make arguments in reliance on the same facts regarding summary judgment, the district court as the trier of fact, even where the ultimate issue is a finding of fact (there, whether a waiver existed), can properly decide the case on summary judgment when the issue of fact is determined by common law. It upheld the district court's resolution of conflicting inferences, finding that no waiver existed and, as the district court judge was the trier of fact, further noted, "To reverse and remand this case to the district court, ordering it to do in another proceeding what it has already done, *i.e.*, draw the appropriate inferences from the undisputed evidentiary facts, would be an extreme waste of judicial resources and an utterly useless act." *Id.* at 520 n.2, 650 P.2d at 662 n.2. We recognize that case involved cross-motions for summary judgment and each relied on the same facts, theories, and issues. However, we find it applicable in this case where the district court judge was the trier of fact and the parties each relied on the same facts in their respective arguments regarding summary judgment.

8

permitted to examine conflicting inferences, and draw conclusions based on what it deemed was most reasonable.

Indeed, McPhee argued as much on remand: McPhee assumed the facts as given by Johnson were true, but argued the evidence supported a contrary inference. McPhee argued that by Johnson's own account, Johnson was developing a peculiar personality prior to any alleged abuse by McPhee. According to Johnson's deposition, other individuals started to treat him negatively due to his odd personality and behavior as early as 2002 and continuing throughout the timeframe in question. As to McPhee's conduct, Johnson asserted McPhee obscenely abused him from roughly May through August 2003, but that the abuse later abated. In 2005, Johnson told McPhee that the prior abuse had been harmful to Johnson. Johnson testified as to general abuse occurring in 2005, including five telephone calls--two of which were initiated by Johnson--and text messages involving insults. During the time between the initial abuse in 2003 and the insults in 2005, McPhee and Johnson were still acquainted and saw one another on occasion. Even after the continuing abuse, Johnson also testified that he did not cease his relationship with McPhee because Johnson had a general philosophy of acceptance and forgiveness. Based on this evidence, taken as true, McPhee argued that it was not reasonable to find that it was foreseeable that insults directed towards Johnson in 2005 were harmful to Johnson. It was nearly two years after the abuse in 2003 that Johnson made mention to McPhee that McPhee's conduct was harmful to Johnson. Johnson continued to engage with McPhee and told McPhee of his attempts to heal, forgive, and accept people. Johnson was self-described as odd, egotistical, and acting contrary to societal standards prior to any abuse by McPhee and further testified that others mistreated him. Additionally, although Johnson did tell McPhee of strange bodily experiences and attempts to heal, even construed in favor of Johnson, there is no fact in the record that Johnson was attempting to heal from abuse by McPhee; rather, Johnson indicated he was suffering from mistreatment, abuse, and insults from a number of individuals.

In considering the evidence on remand and assuming the abuse alleged by Johnson occurred, the district court found an insufficient basis upon which to find that McPhee had notice or should have been aware that Johnson's fragility, attempts to heal, or strange bodily experiences were caused, aggravated, or provoked by Johnson's conduct. The district court also noted several facts that Johnson testified to: Johnson experienced abuse by other individuals, apart from McPhee; Johnson acted strangely throughout the timeframe in question; and Johnson

initiated contact with McPhee in 2005 and 2006. Drawing reasonable inferences from these facts, the district court concluded it was not foreseeable to McPhee that his conduct would cause Johnson emotional distress.

## III.

## CONCLUSION

We conclude the district court properly applied the legal standard regarding duty and causation by focusing on whether it was foreseeable to McPhee that Johnson had a special vulnerability and that McPhee's conduct would cause harm to Johnson. Additionally, we conclude the district court did not err in drawing inferences or in determining that Johnson failed to establish a genuine issue of fact as to duty and causation. Accordingly, we affirm the district court's summary judgment in favor of McPhee and JCAV, LLC on Johnson's claim of negligent infliction of emotional distress.

Judge LANSING and Judge MELANSON **CONCUR.**